Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
Eric R. Maas, Bar No. 345450
EMaas@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Ramsey M. Al-Salam, Bar No. 109506
RAlsalam@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

*Counsel for Defendant Costco Wholesale Corp.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR MADE GOLF COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> COSTCO WHOLESALE CORP., and SOUTHERN CALIFORNIA DESIGN COMPANY d/b/a INDI GOLF, <br><br> Defendants. | Case No. 24-CV-0212-AGS-VET <br><br> DEFENDANT COSTCO WHOLESALE CORP.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY CLAIMS IN INTERIM <br><br> Date: April 19, 2024 <br> Time: 2:30 p.m. <br> Judge: Hon. Andrew G. Schopler |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................ 1

II.  TAYLOR MADE AND COSTCO HAVE AGREED TO ARBITRATE THEIR DISPUTES ................................................................................................................... 2

III. THE COURT SHOULD COMPEL ARBITRATION ................................................. 3

    A.    There is a Strong Policy Favoring Arbitration .................................................... 3

    B.    The Parties Delegated the Question of Arbitrability to the Arbitrator ................ 4

    C.    The Parties' Agreement Covers the Present Dispute .......................................... 6

IV.  CONCLUSION ............................................................................................................ 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AT&T Tech., Inc. v. Communications Workers of America*,
   475 U.S. 643 (1986) ............................................................................... 3, 6

*Brennan v. Opus Bank*,
   796 F. 3d 1125 (9th Cir. 2015) ............................................................ 3, 4, 5

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ..................................................................................... 3

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   586 U.S., 139 S. Ct. 524 (2019) ............................................................ 1, 4, 5

*Industrial Wire Prods., Inc. v. Costco Wholesale Corp.*,
   576 F. 3d 516 (8th Cir. 2009) ............................................................ 3, 7, 8

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
   363 F. 3d 1010 (9th Cir. 2004) .................................................................... 3

*Oracle America, Inc. v. Myriad Group A.G.*,
   724 F. 3d 1069 (9th Cir. 2013) .................................................................. 4, 5

*Petrofac, Inc. v. DynMcDermott Peetroleum Operations Co.*,
   687 F. 3d 671 (5th Cir. 2012) ....................................................................... 4

*Profitstreams, LLC v. Ameranth, Inc.*,
   2011 WL 4499009 (S.D. Cal. Sep. 27, 2011) ............................................... 4

*Promega Corp. v. Life Technologies Corp.*,
   674 F. 3d 1352 (Fed. Cir. 2012) .................................................................... 4

*Republic of Arg. V. BG Grp. PLC*,
   665 F. 3d 1363 (D.C. Cir. 2012) ................................................................... 4

*ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*,
   17 F. 4th 1377 (Fed. Cir. 2021) .................................................................... 4

*Simula, Inc. v. Autoliv, Inc.*,
   175 F. 3d 716 (9th Cir. 1999) ....................................................................... 3

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Swyula v. Teleport Mobility, Inc.*,
  2023 WL 4630620 (S.D. Cal. July 18, 2023) ........................................................ 4

**STATUTES**

9 U.S.C. § 2 ............................................................................................................. 3, 6

9 U.S.C. § 3 ................................................................................................................ 1

9 U.S.C. § 4 ................................................................................................................ 3

## I. INTRODUCTION

Defendant Costco Wholesale Corporation ("Costco") seeks an Order compelling plaintiff Taylor Made to arbitrate its claims against Costco and staying the claims against Costco pending the outcome of arbitration. Although not mentioned in the Complaint, Costco has purchased and sold golf merchandise manufactured by Taylor Made. As part of their commercial relationship, Costco and Taylor Made are parties to a written agreement that, among other things, provides that all disputes arising from "a commercial relationship" between the parties and that involves "a transaction or occurrence … including without limitation any tort or statutory claim," shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). This agreement encompasses the current patent dispute. In accordance with that agreement and the applicable law, Costco now seeks an order compelling arbitration and staying Taylor Made's claims in this action pending the completion of arbitration.

Where (1) there is an agreement to arbitrate, and (2) the agreement encompasses the dispute at issue, the court must compel arbitration. 9 U.S.C. § 3. Here, the Court's work is straightforward. There is no question that the Parties' written contract contains a broad clause specifying that commercial disputes arising between the parties be arbitrated. This resolves the first issue in favor of arbitration. As to whether this specific dispute is subject to arbitration, recent authority makes clear that this question must be resolved by arbitration, not by this Court. Indeed, the Supreme Court recently reaffirmed that when "the parties' contract delegates the arbitrability question to the arbitrator, a court may not override the contract" and in those circumstances "a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. (forthcoming), 139 S. Ct. 524, 529 (2019). In light of the undisputed facts

and the controlling law, this Court must refer this matter to arbitration in accordance with the Parties' agreement.

## II.   TAYLOR MADE AND COSTCO HAVE AGREED TO ARBITRATE THEIR DISPUTES

There is no dispute that the parties have agreed to arbitrate certain disputes. In January of 2010, Taylor Made executed a Costco Wholesale Global Import Supplier Agreement. Maas Dec. at Ex. A ("Supplier Agreement"). The Supplier Agreement includes a mandatory arbitration clause that provides, in part, that "[a]ll claims and disputes that arise out of a commercial relationship and (1) are between Supplier and Costco or either's affiliates, subsidiaries, parents, officers, directors, and/or their employees, and (2) arise out of or relate to the Agreement Documents or their subject matter, or any other agreement or transaction or occurrence between Supplier and Costco Wholesale (including without limitation any tort or statutory claim) ("Dispute"), shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), … in English at Seattle, Washington..." Supplier Agreement at ¶ 26.1.

In the Supplier Agreement, Taylor Made "acknowledges and agrees that (1) it has freely and voluntarily accepted these arbitration and dispute provisions as part of the negotiation of the Agreement Documents…" and that the parties' "agreement to arbitrate covers, without limitation, any claims with respect to matters relating to the distribution rights of any of the parties arising under this Import Agreement or any applicable law." Supplier Agreement at 15. David Abeles, then an Executive Vice President at Taylor Made and now Taylor Made's president and CEO, signed the Supplier Agreement on behalf of Taylor Made on January 28, 2010. Supplier Agreement at ¶ 26.2.

In relevant part, the Commercial Arbitration Rules of the American Arbitration Association provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence,

scope, or validity of the arbitration agreement." Maas Dec. Ex. B ("AAA Rules") at § R-7(a).

## III. THE COURT SHOULD COMPEL ARBITRATION

### A. There is a Strong Policy Favoring Arbitration

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See* 9 U.S.C. § 2; *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Under the FAA, agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Public policy has long favored the use of arbitration as an alternative to judicial resolution of claims. *See Simula, Inc. v. Autoliv, Inc.*, 175 F. 3d 716, 719 (9th Cir. 1999). So strong is this policy that the Supreme Court has held that arbitration must be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). If there is ambiguity, the dispute "should be resolved in favor of coverage." *Id.* A party to an arbitration agreement may bring a motion in federal district court to compel arbitration in accordance with the terms of the agreement. *See* 9 U.S.C. § 4. Where there is (1) a valid agreement to arbitrate, and (2) the agreement encompasses the dispute at issue (*i.e.*, the dispute is arbitrable), the court must compel arbitration. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F. 3d 1010, 1012 (9th Cir. 2004); *see also Brennan v. Opus Bank*, 796 F. 3d 1125, 1130 (9th Cir. 2015).

This strong policy in favor of arbitration applies to patent disputes. Indeed, courts have compelled Costco's vendors to arbitrate patent disputes in the past. In *Industrial Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F. 3d 516, 521 (8th Cir. 2009), for example, the Eighth Circuit reversed the district court's refusal to compel arbitration, finding that a Costco vendor agreement similar to that in the instant case encompassed patent disputes. Other courts, including others in this

district, have likewise compelled arbitration of patent disputes. *See*, *e.g.*, *Promega Corp. v. Life Technologies Corp.*, 674 F. 3d 1352, 1356 (Fed. Cir. 2012) (patent infringement); *Swyula v. Teleport Mobility, Inc.*, 2023 WL 4630620, at *12 (S.D. Cal. July 18, 2023) (patent inventorship dispute); *Profitstreams, LLC v. Ameranth, Inc.*, 2011 WL 4499009, at *5 (S.D. Cal. Sep. 27, 2011) (patent licensing dispute).

### B. The Parties Delegated the Question of Arbitrability to the Arbitrator

Most importantly, the question of whether this dispute is subject to arbitration is an issue for the arbitrator, not this Court. Parties may delegate the power to decide arbitrability to the arbitrator through "clear and unmistakable" evidence of an agreement to do so. Incorporation of the Commercial Arbitration Rules of the American Arbitration Association ("AAA") is considered to constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Brennan*, 796 F. 3d at 1130; *Oracle America, Inc. v. Myriad Group A.G.*, 724 F. 3d 1069 (9th Cir. 2013); *see also ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, 17 F. 4th 1377, 1383 (Fed. Cir. 2021); *Petrofac, Inc. v. DynMcDermott Peetroleum Operations Co.*, 687 F. 3d 671, 675 (5th Cir. 2012); *Republic of Arg. V. BG Grp. PLC*, 665 F. 3d 1363, 1371 (D.C. Cir. 2012). Where the contract delegates the question of arbitrability to the arbitrator, "the courts must respect the parties' decision as embodied in the contract" and defer the question of arbitrability to the arbitrator. *Henry Schein, Inc.* 139 S. Ct. 529.

In *Brennan*, the court was faced with contractual text like that at issue here: "any controversy or claim arising out of this [Employment] Agreement or [Brennan's] employment with the Bank or the termination thereof … shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association." *Brennan*, 796 F. 3d at 1128. Acknowledging that the AAA Rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction…," the Ninth Circuit joined "virtually every circuit to have

considered the issue" in holding "that the incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties have agreed to arbitrate arbitrability." *Id.* at 1130. Here, the court held, where the parties have clearly and unmistakably agreed to arbitrate arbitrability, the court is required to enforce that agreement. *Id.* at 1132; *see also Henry Schein, Inc.* 139 S. Ct. 529.

The Ninth Circuit confronted a similar issue in *Oracle America, Inc. v. Myriad Group A.G.* 724 F. 3d 1069, 1074–5 (9th Cir. 2013). In *Oracle*, the parties' arbitration agreement incorporated the "UNCITRAL" arbitration rules, which the court explained "contain a jurisdictional provision similar to" the AAA Rules. There, the court likewise recognized the widespread agreement that "incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 1074. The court held that "as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that the incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator." *Id.* at 1075. As the court recognized, given that the AAA Rules and UNCITRAL rules contain similar jurisdictional provisions, the analysis applies equally here. *Id.* at 1074.

Here, the Court is presented with contractual text nearly identical to that in *Brennan*. The Parties' Supplier Agreement states that "all claims and disputes … shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association ("AAA")." Supplier Agreement at ¶ 26.1. Reviewing the AAA Rules in effect at the time the Supplier Agreement was executed reveals the same exact provision that the Ninth Circuit held delegates the question of arbitrability to the arbitrator. AAA Rules at § R-7(a); *Brennan,* 796 F. 3d at 1130. Because the Parties incorporated the AAA rules into their arbitration agreement, they clearly and unmistakably agreed to arbitrate arbitrability. Additionally, like in *Oracle*, Costco and Taylor Made are two sophisticated corporate entities, and the

Supplier Agreement is a commercial agreement. Accordingly, this Court should find that the question of arbitrability has been delegated to the arbitrator. Because the Parties' agreement contains an arbitration provision that defers the question of arbitrability to the arbitrator, the Court must send this matter to arbitration.

### C. The Parties' Agreement Covers the Present Dispute

As discussed above, the Parties have delegated the determination of whether the instant dispute falls within the scope of the arbitration clause to the arbitrator. Even if the Parties had not, Costco would need only show that the Parties' arbitration clause is "susceptible of an interpretation that covers the asserted dispute," where all ambiguities "should be resolved in favor of coverage." *AT&T*, 475 U.S. at 650. The clause and the Supplier Agreement as a whole are susceptible to such an interpretation.

As an initial matter, there is nothing that indicates that the Supplier Agreement has been terminated. Thus, the Parties' arbitration agreement remains "valid, irrevocable, and enforceable." 9 U.S.C. § 2.

Turning to the text of the arbitration clause specifically, the agreement to arbitrate encompasses "[a]ll claims and disputes" that arise between the Parties, whether or not they arise from sales under the agreement. Supplier Agreement at ¶ 26.1. The clause covers disputes that "arise out of a commercial relationship and (1) are between Supplier and Costco … and (2) arise out of or relate to the Agreement Documents or their subject matter, **or any other agreement or transaction or occurrence** between Supplier and Costco Wholesale (**including without limitation any tort or statutory claim**) … shall be arbitrated." *Id.* (emphasis added). This dispute arises out of a commercial relationship because it arises out of Costco's sale of allegedly infringing products. *See* Dkt. No. 1 ("Complaint") at ¶ 34. This dispute satisfies condition (1) above because it is between Costco and Taylor Made, who was the "Supplier" in the Supplier Agreement. *See* Complaint at ¶¶ 2–4; Supplier Agreement at ¶ 2.1. This dispute

satisfies condition (2) for two reasons.  First, the present dispute falls well within the general category of "any other agreement or transaction or occurrence … including without limitation any tort or statutory claim" between the Parties. Supplier Agreement at ¶ 26.1.  Patent infringement and false advertising claims are certainly within the scope of "any tort or statutory claim" prescribed by the agreement.  *Id.*; *see also* Complaint at ¶ 1 (specifying claims against Costco pursuant to several federal statutes).  Second, this dispute arises "out of or relates to the Agreement Documents or their subject matter" because this dispute arises out of Costco's sale of golf clubs, which are squarely within the Supplier Agreement's subject matter, "golf merchandise."  *Compare* Complaint at ¶ 34 *with* Supplier Agreement at 1.  Because this dispute satisfies every provision of the Parties' arbitration agreement, the arbitration agreement covers this dispute.  Because the arbitration agreement covers this dispute, the Court should grant Costco's motion and send this matter to arbitration.

The Parties also agreed that "this agreement to arbitrate covers, without limitation, any claims with respect to matters relating to the distribution rights of any of the parties arising under this Import Agreement or **any applicable law**." Supplier Agreement at ¶ 26.2 (emphasis added).  Certainly Taylor Made's claims in this case relate to Costco's distribution rights because Taylor Made's claims arise out of Costco's alleged sale of goods.  Complaint at ¶ 34.  Taylor Made also seeks to enjoin Costco's distribution rights of the accused golf clubs.  *Id*. at 18.  The Eighth Circuit reviewed this exact language when Costco moved to compel arbitration in *Industrial Wire Products*.  576 F. 3d at 521.  The court recognized that due to the "broad language" of this paragraph, "we simply cannot say 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *MedCam, Inc. v. MCNC*, 414 F. 3d 972, 975 (8th Cir. 2005)).  Specifically, the "infringement claims reasonably 'relat[e]' to Costco's right to 'distribut[e]'" the accused products, which the

-7-     24-CV-0212-AGS-VET
MOTION TO COMPEL ARBITRATION
165727213.3

plaintiff "believes violates its intellectual property rights." *Id*. (quoting the applicable supplier agreement in *IWP*, which has language identical to that in the Supplier Agreement in this case.). Ultimately, the court held that "[a]t best, [this paragraph] plainly requires arbitration of IWP's claims. At worst, the provision is ambiguous and susceptible of an interpretation that covers IWP's claims." *Id*. Accordingly, the court reversed the district court's denial of Costco's motion to compel arbitration and instructed the district court to enter an order compelling arbitration. *Id*. The present dispute, with identical language and largely comparable claims, likewise falls well within the Parties' arbitration agreement. Thus, the Court should grant Costco's motion and compel arbitration.

## IV.   CONCLUSION

The only two questions before the Court on a motion to compel arbitration are: (1) whether there is a valid arbitration agreement, and (2) whether the agreement encompasses the dispute at issue. Here, there is a valid arbitration agreement, and whether the agreement encompasses the dispute at issue has been delegated to the arbitrator by the Parties. Thus, this matter must be stayed and the dispute between the parties must proceed to arbitration. Costco respectfully asks that this Court stay this matter and refer the Parties' dispute to arbitration in accordance with the Parties' agreement.

Dated: March 18, 2024

**PERKINS COIE LLP**

By: */s/ Ramsey M. Al-Salam*
Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
Eric R. Maas, Bar No. 345450
EMaas@perkinscoie.com
Ramsey M. Al-Salam, Bar No. 109506
RAlsalam@perkinscoie.com

*Counsel for Defendant Costco Wholesale Corp.*

## **CERTIFICATE OF COMPLIANCE**

Counsel for all Parties met and conferred by videoconference on March 15, 2024, pursuant to the Court's Civil Chambers Rule 5. The Parties were unable to resolve this issue at that conference.

By: */s/ Ramsey M. Al-Salam*
Ramsey M. Al-Salam