JC ROZENDAAL (*pro hac vice*)
  jcrozendaal@sternekessler.com
BYRON PICKARD (*pro hac vice*)
  bpickard@sternekessler.com
ROBERT NIEMEIER (*pro hac vice*)
  rniemeier@sternekessler.com
STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.
1101 K St NW, 10th Floor
Washington, DC 20005
Telephone: (202) 371-2600
Facsimile: (202) 371-2540

KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff
Taylor Made Golf Company, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| TAYLOR MADE GOLF COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORP., AND SOUTHERN CALIFORNIA DESIGN COMPANY d/b/a INDI GOLF,<br><br>Defendants. | CASE NO. 3:24-cv-00212-AGS-VET<br><br>Judicial Officer:  Andrew G. Schopler<br>Courtroom:      5C<br><br>**PLAINTIFF TAYLOR MADE GOLF COMPANY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT COSTCO WHOLESALE CORP.'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS IN INTERIM**<br><br>Date:      May 3, 2024<br>Time:      2:30 pm<br>Location:  Courtroom 5C |

Mitchell
Silberberg &
Knupp LLP

16439002.1

24-CV-00212-AGS-VET

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 5

I.    Costco improperly seeks to compel arbitration under an abandoned
      agreement with no relationship to current claims. ......................................... 5

           A.    No relevant arbitration agreement exists. ................................... 6

           B.    The parties terminated the 2010 Import Agreement .................... 9

           C.    Whether the parties formed an agreement to arbitrate patent
                 infringement claims cannot be delegated to an arbitrator. ....... 13

II.   Even if the 2010 Import Agreement were relevant and still in force, it
      would not require arbitration of the present dispute. ................................... 14

           A.    If any arbitration agreement survived the termination of the
                 2010 Import Agreement, it does not cover the current
                 dispute. .................................................................................... 15

           B.    The parties did not clearly and unmistakably agree to
                 delegate arbitrability questions to an arbitrator. ..................... 22

CONCLUSION ........................................................................................................ 24

Mitchell
Silberberg &
Knupp LLP

16439002.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alessandri v. Apr. Indus., Inc.*,
  934 F.2d 1 (1st Cir. 1991) ................................................................. 10

*Biller v. S-H OpCo Greenwich Bay Manor, LLC*,
  961 F.3d 502 (1st Cir. 2020) ............................................................. 22

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022) .......................................................... 14

*City of Tacoma v. City of Bonney Lake*,
  269 P.3d 1017 (Wash. 2012) .............................................................. 7

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
  6 F.4th 308 (2d Cir. 2021) ......................................................... 22, 23

*Fischer v. Kelly Servs. Glob., LLC*,
  No. 23-cv-1197, 2024 WL 382181 (S.D. Cal. Jan. 31, 2024) ........................... 13

*Flores v. Barr*,
  934 F.3d 910 (9th Cir. 2019) ............................................................ 20

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
  586 U.S. 63 (2019) ....................................................................... 14

*Indus. Wire Prods., Inc. v. Costco Wholesale Corp.*,
  576 F.3d 516 (8th Cir. 2009) ....................................................... 9, 21, 22

*Jackson v. Amazon.com, Inc.*,
  65 F.4th 1093 (9th Cir. 2023) ................................................... 2, 6, 8, 9, 14

*Just Film, Inc. v. Merch. Servs., Inc.*,
  No. C 10-1993, 2011 WL 2433044 (N.D. Cal. June 13, 2011) ......................... 11

*LAVVAN, Inc. v. Amyris, Inc.*,
  No. 21-1819, 2022 WL 4241192, at *2 (2d Cir. Sept. 15, 2022) ...................... 23

*Litton Fin. Printing Div. v. N.L.R.B.*,
  501 U.S. 190 (1991) ............................................................ 3, 4, 6, 11, 13

Mitchell Silberberg & Knupp LLP

16439002.1

ii

24-CV-00212-AGS-VET

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ........................................................................... 20

*Metropolitan Life Insurance Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019) ................................................ 12, 23, 24

*Mod. Builders, Inc. of Tacoma v. Manke*,
615 P.2d 1332 (Wash. Ct. App. 1980) ........................................... 10

*Monroe v. Fetzer*,
350 P.2d 1012 (Wash. 1960) .......................................................... 10

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ....................................................................... 13

*Moritz v. Universal City Studios LLC*,
268 Cal. Rptr. 3d 467 (Cal. Ct. App. 2020) ..................................... 8

*Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l
Union*,
665 F.3d 96 (4th Cir. 2012) ........................................................... 22

*Perez v. Discover Bank*,
74 F.4th 1003 (9th Cir. 2023) ................................... 2, 7, 8, 13, 14, 24

*Peter Attia v. Oura Ring, Inc.*,
No. 23-cv-03433, 2024 WL 1382464 (N.D. Cal. Apr. 1, 2024) ......... 13, 14

*Profitstreams, LLC v. Ameranth, Inc.*,
No. 11-cv-0766, 2011 WL 4499009 (S.D. Cal. Sept. 27, 2011) ........... 6, 14

*Promega Corp. v. Life Techs. Corp.*,
674 F.3d 1352 (Fed. Cir. 2012) ....................................................... 6

*Raima, Inc. v. Myriad France, SAS*,
No. C12-1166, 2012 WL 6201709 (W.D. Wash. Dec. 11, 2012) ........... 12

*Revitch v. DIRECTV, LLC*,
977 F.3d 713 (9th Cir. 2020) ........................................................... 7

*Schoneman v. Wilson*,
785 P.2d 845 (Wash. Ct. App. 1990) ............................................. 10

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020) ....................................................... 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

Mitchell Silberberg & Knupp LLP

16439002.1

*Sywula v. Teleport Mobility, Inc.*,
    No. 21-cv-01450, 2023 WL 4630620 (S.D. Cal. July 18, 2023) ........................ 6

*Viking Bank v. Firgrove Commons 3, LLC*,
    334 P.3d 116 (Wash. Ct. App. 2014) .................................................... 7

*U.S. ex rel Welch v. My Left Foot Children's Therapy, LLC*,
    871 F.3d 791 (9th Cir. 2017) ............................................................ 8

*Winery, Distillery & Allied Workers, Loc. 186 v. Guild Wineries & Distilleries*,
    812 F. Supp. 1035 (N.D. Cal. 1993) .................................................. 11

**Statutes**

9 U.S.C. § 2 .................................................................................... 2

15 U.S.C. § 1125 ............................................................................ 19

35 U.S.C. § 271 ............................................................................. 19

**Other Authorities**

Federal Arbitration Act .................................................................... 1

Restatement (Second) of Contracts (1981) ....................................... 3, 10

Mitchell
Silberberg &
Knupp LLP
16439002.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

# INTRODUCTION

Taylor Made sued Defendants Costco Wholesale Corp. ("Costco") and Southern California Design Company ("SCDC") (collectively, "Defendants") for infringing five of Taylor Made's patents and engaging in false advertising relating to Costco's Kirkland brand golf clubs. In response, Costco (but not SCDC) has moved to compel arbitration based on a 14-year-old agreement (the "2010 Import Agreement" or "Import Agreement" (D.I. 20-3))[1] that does not contemplate disputes over patent rights or false advertising. Costco's motion should be denied for three independent reasons: (1) no relevant agreement to arbitrate exists; (2) to the extent the 2010 Import Agreement was relevant, it was replaced by a superseding Vendor Agreement in 2011 (the "2011 Vendor Agreement" or "Vendor Agreement" (attached as Ex. 1 to Declaration of Tim Ulrich "Ulrich Decl") that was in turn abandoned by the parties in 2013; (3) to the extent that the arbitration provision in the 2010 Import Agreement survived the termination of that contract, the arbitration provision does not require arbitration of the current dispute between Taylor Made and Costco. Although these grounds for denying the motion fall into different doctrinal categories, they share a common theme: the current patent and false advertising disputes have *nothing to do with the commercial relationship between Taylor Made and Costco*, and, as a result, no valid arbitration agreement requires arbitrating these disputes. Finally, this Court must determine whether a relevant arbitration agreement exists; that issue cannot be delegated to an arbitrator. The Court should likewise determine questions about the scope and enforceability of any such agreement because the 2010 Import Agreement does not clearly and unmistakably delegate those issues to an arbitrator.

***No relevant agreement to arbitrate.*** The Court (not an arbitrator) must determine whether a relevant agreement to arbitrate exists. The Federal Arbitration

---

[1] Costco refers to this agreement as the "Supplier Agreement," but from the very first line, the contract refers to itself as the "Import Agreement."

Mitchell Silberberg & Knupp LLP

16439002.1

1                    24-CV-00212-AGS-VET

1   Act provides that a "written provision in . . . a contract evidencing a transaction

2   involving commerce to settle by arbitration a controversy *thereafter arising out of*

3   *such contract or transaction . . .* shall be valid, irrevocable, and enforceable, save

4   upon such grounds as exist at law or in equity for the revocation of any contract." 9

5   U.S.C. § 2.[2] That is, the "factual allegations must at least 'touch matters covered by

6   the contract containing the arbitration clause.'" *Jackson v. Amazon.com, Inc.*, 65

7   F.4th 1093, 1101 (9th Cir. 2023) (citation omitted). Otherwise, no relevant

8   arbitration agreement exists. Here, the question is not whether an arbitration *could*

9   bind these claims, but whether the 2010 Import Agreement in particular

10  contemplates and touches these specific patent and false advertising claims. The

11  answer is that it does not. The 2010 Import Agreement covers merchandise

12  supplied to Costco by Taylor Made where Costco is the importer of record, and it

13  broadly contemplates arbitration of disputes that relate to an "agreement,

14  transaction, or occurrence" between those two parties. D.I. 20-3 (2010 Import

15  Agreement) at 14–15, § 26.1. But the current dispute does not relate to any

16  occurrence between the parties; Taylor Made's present causes of action would be

17  the same regardless of whether it had ever had any prior dealings with Costco. The

18  2010 Import Agreement does not contemplate or touch on issues of patent

19  infringement or false advertising involving Costco products from an entirely

20  different third party supplier arising 14 years after the contract was entered into.

21  Courts routinely decline to compel arbitration where the claims are unrelated and

22  separated by substantial time from the contract—even where those contracts are

23  still in force. *See e.g.*, *Perez v. Discover Bank*, 74 F.4th 1003, 1010 (9th Cir. 2023).

24  Significantly, although similar considerations may be in play, courts treat this

25  inquiry as going to the issue whether there is an agreement to arbitrate at all, not

26  about the scope or enforceability of the agreement. Costco's motion simply ignores

27  this contract-formation issue.

28  _____

[2] All emphasis is supplied unless otherwise indicated.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

***The Parties Replaced the 2010 Import Agreement with a 2011 Vendor Agreement that Was Abandoned by 2013.*** The 2010 Import Agreement was signed in January 2010 and Taylor Made sold imported golf clubs to Costco in 2010, but not thereafter. In 2011, the parties entered into a new 2011 Vendor Agreement to govern "[a]ll sales and deliveries of all merchandise by [Taylor Made] to Costco." 2011 Vendor Agreement ¶A (attached as Ex. 1 to Ulrich Decl) (hereinafter, "Ex. 1"). The terms of the 2011 Vendor Agreement "supersede all terms in [Taylor Made's] invoices and other forms, and all prior oral or written communications between" the parties. *Id.* ¶ H. From 2011 to 2013, Taylor Made sold golf apparel to Costco domestically, without any importation. Ulrich Decl ¶ 9. The terms of the new 2011 Vendor Agreement that replaced the 2010 Import Agreement reflected the change in the business relationship between the parties to focus on domestic sales rather than importation. *Id.* ¶ 10. The change in contracts and in the parties' conduct make it clear that the 2010 Import Agreement on which Costco relies has been terminated.

The last direct sale of any merchandise from Taylor Made to Costco under the new 2011 Vendor Agreement was in 2013, more than ten years before Costco's infringing conduct even began. Since 2013, Taylor Made has supplied merchandise to Costco indirectly through an independent third-party distributor, but neither party has made any effort to seek performance or enforce either the 2010 Import Agreement or the 2011 Vendor Agreement since the direct sales relationship ended in 2013. *Id.* ¶ 11. "[M]ere inaction on both sides, such as the failure to take any steps looking toward performance or enforcement, may indicate an intent to abandon the contract." Restatement (Second) of Contracts § 283 (1981). Contractual duties "cease, in the ordinary course, upon termination of the [contract]." *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 207 (1991).

Although the duty to arbitrate may survive the termination of a contract, it does so only to the extent needed "in order to enforce duties arising under the

Mitchell Silberberg & Knupp LLP
16439002.1
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

contract." *Id.* at 208. Unlike the broad presumption in favor of arbitrability when the contract is alive, post-termination arbitrability is presumed only if (1) the dispute deals with pre-termination events, (2) where post-termination actions infringe a right created by the agreement, or (3) if another right survives the contract and forms the basis for the dispute. *Id.* at 205–206. Otherwise, the arbitration provision terminates with the termination of the contract. The present dispute does not fall into any of these three categories. Therefore, neither the superseded 2010 Import Agreement nor the abandoned 2011 Vendor Agreement creates a duty to arbitrate this dispute.

***The Arbitration Provision in the 2010 Import Agreement Does Not Cover the Current Dispute.*** The burden is on Costco to identify a binding arbitration agreement, and the only one Costco identifies is in the superseded 2010 Import Agreement. Even if the 2010 Import Agreement were relevant and in force, which it is not, it would not require arbitration. Section 26.1 of the Import Agreement, entitled "Arbitration of Disputes," sets forth which disputes are to be arbitrated and which procedures are to be used. D.I. 20-3 at 14–15. This provision, while broad, requires disputes to be arbitrated to relate to an "agreement, transaction or occurrence" between Taylor Made and Costco. The present dispute does not; Taylor Made's claims do not depend in any way on prior interaction with Costco. To get around this important limit, Costco invokes Section 26.2, which contains a laundry list of affirmations by Taylor Made designed to facilitate enforcement of the arbitration clause by anticipating and addressing common sources of unenforceability (e.g., unconscionability, lack of consideration, mistake). D.I. 20-3 at 15. The fifth item in the list says that Taylor Made agrees that the arbitration provision covers "claims with respect to matters relating to the distribution rights of any of the parties arising under this Import Agreement or any applicable law." *Id.* When taken in context together with Section 26.1, this clause anticipates and avoids the argument that only disputes about Costco's distribution rights under the

Mitchell
Silberberg &
Knupp LLP

16439002.1

4                                    24-CV-00212-AGS-VET
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL

2010 Import Agreement (which are limited to circumstances in which Costco is the importer of record for the merchandise) need to be arbitrated; it recognizes that disputes about Costco's distribution of Taylor Made merchandise need to be arbitrated regardless of the source of those distribution rights. *Id.* Costco's contrary reading of the clause as an entirely separate agreement that abrogates the careful limits on arbitrability set forth in Section 26.1 is not plausible and should be rejected.

*The parties did not clearly and unmistakably delegate to an arbitrator questions of arbitrability.* There is no general presumption that questions about the scope or enforceability of an arbitration agreement should be delegated to an arbitrator. Rather, such questions are for the Court to decide unless the delegation to the arbitrator is "clear and unmistakable." Here, there is no such clear delegation. Section 26.1 of the 2010 Import Agreement states specifically which categories of disputes are to be resolved under the AAA rules, and the present dispute does not clearly and unmistakably fall within any such category. D.I. 20-3 at 14–15. Therefore, the Court should address arbitrability questions.

The Court should deny Costco's motion because there is no relevant agreement to arbitrate. Alternatively, to the extent the 2010 Import Agreement is relevant and its arbitration provision survived the termination of the agreement, that provision does not require arbitration of the current set of disputes.

## ARGUMENT

### I. Costco improperly seeks to compel arbitration under an abandoned agreement with no relationship to current claims.

No agreement to arbitrate the current dispute exists. The 2010 Import Agreement on which Costco relies has no bearing on the current claims for patent infringement. *See infra* Section I.A. Furthermore, the 2010 Import Agreement was superseded in 2011 by a Vendor Agreement that in turn terminated through the mutual abandonment by the parties in 2013. Thus, to compel arbitration under the

Mitchell
Silberberg &
Knupp LLP

16439002.1

1   2010 Import Agreement, Costco must also show that the current patent claims have

2   their "real source" in the 2010 Import Agreement, even though the patents and the

3   infringing product would not exist for many years after the agreement ended.

4   *Litton*, 501 U.S. at 192. This it cannot do. *See infra* Section I.B. The question

5   whether a relevant arbitration agreement exists is one for the Court; it cannot be

6   delegated to an arbitrator. *See infra* Section I.C.

7           **A. No relevant arbitration agreement exists.**

8           Costco has presented no evidence that Taylor Made's allegations have any

9   relationship to the 14-year-old 2010 Import Agreement, which does not even

10  mention Taylor Made's patents. D.I. 20-3. Indeed, the only intellectual property

11  referenced in the agreement is to Costco's "exclusive use of trademarks and other

12  intellectual property" that Costco owns. D.I. 20-3 at 13 § 25. Costco does not

13  explain how this 2010 Import Agreement touches the current dispute beyond citing

14  cases which stand for the unremarkable assertion that an agreement to arbitrate

15  may cover patent claims. *See, e.g.*, *Promega Corp. v. Life Techs. Corp.*, 674 F.3d

16  1352, 1354 (Fed. Cir. 2012) (arbitration clause was part of a patent license

17  agreement); *Sywula v. Teleport Mobility, Inc.*, No. 21-cv-01450, 2023 WL

18  4630620, at *1 (S.D. Cal. July 18, 2023) (arbitration provision part of a

19  "partnership for the purpose of developing and selling or monetizing intellectual

20  property" (cleaned up)); *Profitstreams, LLC v. Ameranth, Inc.*, No. 11-cv-0766,

21  2011 WL 4499009, at *3 (S.D. Cal. Sept. 27, 2011) (arbitration agreement was part

22  of a license agreement and the dispute was over "the scope of the license").

23          Even under the broadest arbitration clauses, the Ninth Circuit has held that

24  the "factual allegations must at least touch matters covered by the contract

25  containing the arbitration clause." *Jackson*, 65 F.4th at 1101 (cleaned up). Costco

26  seeks to evade this requirement by proposing a construction of the contract

27  wherein Taylor Made has agreed to arbitrate all claims against Costco regardless of

28  subject matter or time since the contract was formed.

Mitchell Silberberg & Knupp LLP
16439002.1

6       24-CV-00212-AGS-VET

1   To see whether a contract covering the dispute was formed, the court

2   "look[s] to state contract law." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th

3   Cir. 2020). Here, the applicable law is the law of Washington state. D.I. 20-3 at

4   12–13 § 22. As in most states, the "primary objective" of Washington contract law

5   is to "ascertain the mutual intent of the parties at the time they executed the

6   contract." *Viking Bank v. Firgrove Commons 3, LLC*, 334 P.3d 116, 120 (Wash.

7   Ct. App. 2014). Washington courts look to two primary sources of evidence as to

8   the party's intent: "the reasonable meaning of the contract language" and "the

9   context surrounding [the] contract's execution." *Id.* at 120 n.2. Contracts are

10  interpreted so as to not produce absurd results. *See City of Tacoma v. City of

11  Bonney Lake,* 269 P.3d 1017, 1022 (Wash. 2012).

12  The interpretation Costco champions—that the parties agreed to arbitrate all

13  claims, no matter when or how they arose—leads to the same absurd results courts

14  have repeatedly rejected. In *Perez v. Discover Bank*, the plaintiff had signed an

15  arbitration agreement which governed "any case, controversy, etc. arising out of or

16  in connection with" the plaintiff's loan. 74 F.4th at 1010 (cleaned up). Then, eight

17  years later, the defendant who had since taken ownership of the loan denied Perez

18  a consolidation loan that would have allegedly "extinguish[ed] the original [] loan"

19  because Perez was undocumented. *Id*. at 1011 When the defendant sought to

20  compel arbitration the Ninth Circuit was clear that it rejected a construction of the

21  contract that would lead to the "absurd result[]" of "binding [parties] to arbitration

22  for claims accruing [eight] years later in an unrelated dispute." *Id.* at 1010.

23  Similarly, in *Revitch v. DIRECTV, LLC*, the Ninth Circuit held that it was "absurd"

24  to interpret the term "affiliate" to refer to unrelated companies that defendant

25  affiliated with "years later," and which were "unrelated" to the current dispute as

26  opposed to the affiliates which actually existed at execution. 977 F.3d at 717.

27  Here, rather than attempt to tie Taylor Made's claims to any specifics of the

28  contract, Costco advances a reading of the arbitration agreement that "stretches to

Mitchell
Silberberg &
Knupp LLP

16439002.1

7                    24-CV-00212-AGS-VET
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL

1   the horizon" without any limiting principle. *See U.S. ex rel Welch v. My Left Foot*

2   *Children's Therapy, LLC*, 871 F.3d 791, 798 (9th Cir. 2017) (rejecting such

3   constructions). Although the arbitration provision in the 2010 Import Agreement is

4   broad, "there is a difference between a clause being broad and unlimited." *Id.*

5   (cleaned up). Costco's reading of Section 26.2's phrase "arising under . . . any

6   applicable law" as encompassing any claim arising under any law relating to

7   Costco's distribution rights generally—as opposed to Costco's rights to distribute

8   Taylor Made merchandise—is particularly suspect. *See* Mot. at 7; D.I. 20-3 at 15.

9   As discussed in greater detail below, the phrase in context functions as an

10  affirmation that Taylor Made understood that the detailed arbitration provision of

11  Section 26.1 (which clearly does not contemplate this sort of unrelated patent-

12  infringement action 14 years later) would apply to disputes about Costco's rights to

13  distribute Taylor Made merchandise regardless of whether those rights arose under

14  the 2010 Import Agreement or some other source. D.I. 20-3 at 14–15. It cannot

15  plausibly be read as a separate arbitration agreement with an entirely different

16  scope and entailing the "absurd" result of arbitrating all claims arising under any

17  law affecting Costco's rights to distribute any product from any supplier. As other

18  courts have found facing similar arguments, "no reasonable person . . . would have

19  understood the . . . arbitration provisions to require arbitration of any future claim

20  of whatever nature or type, no matter how unrelated to the agreements nor how

21  distant in the future the claim arose." *Moritz v. Universal City Studios LLC*, 268

22  Cal. Rptr. 3d 467, 474 (Cal. Ct. App. 2020); *see also Perez*, 74 F.4th at 1010.

23      Several courts have held that where a plaintiff "would still be able to bring

24  the same claims," in the hypothetical world it "had no contract with [the

25  defendant]," then no agreement to arbitrate that touches the dispute was formed.

26  *See, e.g.*, *Jackson*, 65 F.4th at 1103 (citing *U.S. ex rel. Welch*, 871 F.3d at 794).

27  There is no dispute that Costco's "alleged violative conduct existed independently"

28  of its contractual relationship with Taylor Made. Taylor Made's patent

Mitchell
Silberberg &
Knupp LLP
16439002.1

8                                 24-CV-00212-AGS-VET
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL

1   infringement claims even lack "the only connection to the [contract]" found in

2   *Jackson* because the misconduct did not occur during Taylor Made and Costco's

3   contractual relationship. *Jackson*, 65 F.4th at 1103. There is a nearly 14 year gap

4   between the signing of this contract and Costco's patent infringement. *See* D.I. 20-

5   3 at 2 § 1.1.

6       Similar to the facts in *Jackson*, the 2010 Import Agreement makes no

7   mention of patent rights, which exist entirely independent of any contractual

8   relationship. 65 F.4th at 1103. Nor was any article covered by Taylor Made's

9   patents-in-suit ever sold under the 2010 Import Agreement—in fact, Taylor

10  Made's patented P790 irons that Costco has attempted to copy would not exist

11  until many years after the contract ended. Thus, Costco's attempt to rely on the

12  Eighth Circuit's interpretation of a similar contract is unavailing. The Eighth

13  Circuit's holding was premised on the unrebutted argument that Costco was

14  distributing a "colorable imitation" of the *same* patented product that it previously

15  distributed for the supplier under the agreement at issue. *Indus. Wire Prods., Inc. v.*

16  *Costco Wholesale Corp.*, 576 F.3d 516, 521 (8th Cir. 2009).

17      There is therefore no way in which the arbitration clause that Costco cites

18  touches Taylor Made's patent claims, and the motion to compel arbitration should

19  be denied for lack of an agreement to arbitrate.

20      **B. The parties terminated the 2010 Import Agreement.**

21      Though the Court may decide the case on the lack of relation between the

22  claims and the 2010 Import Agreement alone, as evidencing a lack of agreement to

23  arbitrate, this motion may also be independently decided on the basis that the 2010

24  Import Agreement was superseded by a new 2011 Vendor Agreement, which was

25  later terminated via mutual abandonment. After entering into the 2010 Import

26  Agreement, which expressly "pertains only to merchandise sold to Costco where

27  Costco is the 'Importer of Record' into the United States," Taylor Made supplied

28  imported golf clubs to Costco in 2010. Ulrich Decl ¶ 8; D.I. 20-3 at 2 § 1.1. In

Mitchell
Silberberg &
Knupp LLP

16439002.1

9                      24-CV-00212-AGS-VET
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL

1   2011, Taylor Made and Costco entered into a new 2011 Vendor Agreement that

2   superseded the 2010 Import Agreement. The 2011 Vendor Agreement explicitly

3   applies to "[a]ll sales and deliveries of all merchandise by [Taylor Made] to

4   Costco." Ex. 1 ¶ A. The terms of the 2011 Vendor Agreement "supersede all terms

5   in [Taylor Made's] invoices and other forms, and all prior oral or written

6   communications between" the parties. *Id.* ¶ H. After the 2011 Vendor Agreement

7   was in place, Taylor Made supplied golf apparel to Costco from 2011 to 2013 in

8   domestic transactions that did not involve importation. Ulrich Decl, ¶ 9. Taylor

9   Made did not directly supply any golf clubs to Costco after 2010. *Id.* Starting in

10  2013, Taylor Made stopped supplying merchandise directly to Costco, due to

11  Costco's demanding packaging requirements, and instead began selling

12  merchandise to an independent third-party intermediary that would in turn package

13  and sell to Costco, among other large retailers. *Id.* ¶ 11. Thus, there has been no

14  performance whatsoever under the superseded 2010 Import Agreement since 2010.

15  In addition, there has been no performance under the 2011 Vendor Agreement

16  since 2013. *Id.* ¶ 10–11. Washington law is clear that parties, by their conduct

17  alone, "may abandon [a contract] and [be] released from their contractual

18  obligations." *Mod. Builders, Inc. of Tacoma v. Manke*, 615 P.2d 1332, 1337

19  (Wash. Ct. App. 1980); *see also Monroe v. Fetzer*, 350 P.2d 1012, 1014–1015

20  (Wash. 1960) (non-performance by both parties was sufficient to find mutual

21  abandonment). "[A]bandonment is . . . [the] mutual rescission of the contract as

22  evidenced by the conduct, as opposed to words, of the parties." *Schoneman v.*

23  *Wilson*, 785 P.2d 845, 849 (Wash. Ct. App. 1990). This conduct need not be overt:

24  "mere inaction . . . may indicate an intent to abandon the contract." *Alessandri v.*

25  *Apr. Indus., Inc.*, 934 F.2d 1, 2 (1st Cir. 1991); *see also* Restatement (Second) of

26  Contracts § 283 (1981). The foregoing contractual provisions and the parties'

27  conduct make it clear that the 2010 Import Agreement on which Costco relies has

28  been terminated.

Mitchell
Silberberg &
Knupp LLP

16439002.1

10                                    24-CV-00212-AGS-VET
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL

1   Contractual duties "cease, in the ordinary course, upon termination of the

2   [contract]." *See Litton*, 501 U.S. at 207. The duty to arbitrate may survive,

3   however, to the extent needed "in order to enforce duties arising under the

4   contract." *Id.* at 208. Unlike the broad presumption in favor of arbitrability when

5   the contract is alive, post-termination arbitrability is presumed only if (1) the

6   dispute deals with pre-termination events, (2) where post-termination actions

7   infringe a right created by the agreement, or (3) if another right survives the

8   contract and forms the basis for the dispute. *Id.* at 205–206. The goal is to prevent

9   parties from dodging the "contractual duty to arbitrate by simply waiting until the

10  day after the contract expired to bring an action regarding a dispute that arose

11  while the contract was in effect." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051,

12  1061 (9th Cir. 2020) (cleaned up). Otherwise, unless the parties intended there to

13  be a perpetual agreement to arbitrate, the agreement to arbitrate ends upon

14  termination. *See e.g. Just Film, Inc. v. Merch. Servs., Inc.*, No. C-10-1993, 2011

15  WL 2433044, at *5 (N.D. Cal. June 13, 2011) ("[Defendant] cannot compel

16  arbitration of claims" that did not meet one of the *Litton* criteria or "arise under

17  [the expired] lease agreement"); *Winery, Distillery & Allied Workers, Loc. 186 v.*

18  *Guild Wineries & Distilleries*, 812 F. Supp. 1035, 1037–1038 (N.D. Cal. 1993)

19  (same). There is no risk here that anyone is dodging contractual duties.

20  Costco does not explicitly argue that the parties intended for there to be a

21  perpetual duty to arbitrate, instead arguing that the arbitration agreement exists

22  because the contract has not been terminated. Mot. at 6. There is no dispute that

23  Taylor Made is not seeking to enforce a different surviving contractual right, or

24  that the events that form the complaint occurred after performance ended. Finally,

25  to the degree that Costco argues that the dispute arises under the contract because it

26  touches its distribution rights, that argument is baseless. It is implausible to suggest

27  that Costco's right to distribute products made by Indi Golf or some other third

28  party somehow vested in a contract with Taylor Made 14 years prior. Washington

Mitchell
Silberberg &
Knupp LLP
16439002.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

courts have held that, where intellectual property claims "exist wholly independent of the agreement," they cannot be the basis for enforcing an expired dispute resolution provision. *See, e.g.*, *Raima, Inc. v. Myriad France, SAS*, No. C12-1166, 2012 WL 6201709 at *6 (W.D. Wash. Dec. 11, 2012) (denying motion to enforce forum selection clause).

Moreover, even if the current dispute related to the 2010 Import Agreement (which it does not), Costco would still need to explain how the contract should bind such a tenuous link more than a decade later. Costco has no plausible argument to that effect because the 2010 Import Agreement has been terminated. The Second Circuit's decision in *Metropolitan Life Insurance Co. v. Bucsek*, 919 F.3d 184, 188 (2d Cir. 2019) is instructive in this regard. The parties in *Bucsek* had entered into an employment agreement containing an arbitration clause pertaining to "any dispute[s]" between them before a third party: the NASD. 919 F.3d at 188. However, five years later the parties had severed their connections to the NASD because the plaintiff was acquired by another company. *Id.* at 189. Thus, when faced with a motion to compel arbitration for claims that arose nine years after the parties "had severed all connections with the NASD," the court held that contract no longer had force to compel arbitration or the delegation of arbitrability. *Id.* at 195–96. Thus, severing contractual relationships with an important third party to the contract, combined with a substantial gap (nine years) between severance and when the claims arose was sufficient to find that there was no existing agreement to arbitrate (even though the signatories were still in contract with one another). Here, *a fortiori*, the termination of the 2010 Import Agreement, combined with the over-a-decade-long gap between the termination and the complained-of patent infringement, even more strongly indicates a lack of an existing agreement to arbitrate.

To the degree Costco attempts to fall back on the "strong policy favoring arbitration," this argument is a red herring. Mot. at 3. The Supreme Court is clear

1   that this "does not authorize federal courts to invent special, arbitration-preferring

2   procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Instead,

3   this policy "merely . . . make[s] arbitration agreements as enforceable as other

4   contracts, but not more so." *Id.* "Accordingly, a court must hold a party to its

5   arbitration contract just as the court would to any other kind. But a court may not

6   devise novel rules to favor arbitration over litigation." *Id.* Arbitration provisions

7   survive only to "enforce duties arising under the contract," not to hamstring new

8   causes of action which accrue years later. *Litton*, 501 U.S. at 208. Costco argues

9   for an "absurd" rule multiple courts have refused to give force to: once you enter

10  into an arbitration agreement, you can never leave (like the Hotel California).

11  ### C. Whether the parties formed an agreement to arbitrate patent

12  ### infringement claims cannot be delegated to an arbitrator.

13          Costco asks this Court to let an arbitrator decide in the first instance whether

14  the current dispute should be arbitrated. But if there is no "valid agreement to

15  arbitrate," which the "controversy thereafter aris[es] out of," there can be no

16  further agreement to delegate the question of arbitrability. *Perez*, 74 F.4th at 1007,

17  1011. Hence, the Court must first determine whether an agreement to arbitrate

18  Taylor Made's patent infringement claims exists. *See Perez* 74 F.4th at 1007; *see*

19  *also Fischer v. Kelly Servs. Glob., LLC*, No. 23-cv-1197, 2024 WL 382181, *13

20  (S.D. Cal. Jan. 31, 2024) (claims could not be delegated under an arbitration

21  agreement "because *no such agreement existed*") (emphasis original).

22          As the party seeking to compel arbitration, Costco "bears the burden of

23  proving . . . such an agreement [exists]." *Peter Attia v. Oura Ring, Inc.*, No. 23-cv-

24  03433, 2024 WL 1382464, at *2 (N.D. Cal. Apr. 1, 2024). As discussed above, its

25  singular attempt to do so amounts to claiming that an unrelated contract contains

26  an arbitration clause of infinite duration and scope. According to Costco if it

27  "merely point[s] to an arbitration agreement" referencing the AAA, the Court is

28  obligated to delegate all further questions to the arbitrator. *Id.* at *3. But this

Mitchell
Silberberg &
Knupp LLP

16439002.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

approach is "not sufficient"; Costco "must instead demonstrate that the parties formed an agreement to arbitrate *the particular claims at issue*." *Id.* (emphasis original) (cleaned up).

The question of whether the formation of the asserted contract touches the dispute at hand (and thus whether an agreement to arbitrate was formed in the first place) should not be confused with the question of arbitrability. Questions of arbitrability deal with "the scope and enforceability of the arbitration provision." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1026 (9th Cir. 2022). In contrast, the question of formation asks whether Taylor Made "would still be able to bring the same claims," if it "had no contract" with Costco at any point. *Jackson*, 65 F.4th at 1103.

Only if the Court determines that an arbitration agreement touching on the dispute exists, can questions about the scope and enforceability of the agreement arise. *See Profitstreams,* 2011 WL 4499009, at *2 (the district court's role is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue" (cleaned up)). Because Taylor Made is challenging the existence of an arbitration agreement touching on the present dispute, Costco's reliance on *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63 (2019), is misplaced. As the Ninth Circuit observed, where a case lacks "a controversy . . . arising out of a contract to arbitrate . . . *Schein* has nothing to say." *Perez*, 74 F.4th at 1011. Only this Court, and not an arbitrator, can properly determine whether a relevant arbitration agreement exists. The Court should find that there is no agreement to arbitrate this dispute, and deny the motion to compel arbitration on that basis.

## II.    Even if the 2010 Import Agreement were relevant and still in force, it would not require arbitration of the present dispute.

To the extent that the arbitration provision survived the termination of the 2010 Import Agreement (which it did not), that provision cannot plausibly be read

1    to encompass the current dispute. *See infra* Section II.A. Moreover, although U.S.

2    law generally favors arbitration, it does not similarly favor delegating questions of

3    arbitrability to an arbitrator. Courts permit such delegation only when the

4    agreement to delegate is clear and unmistakable. Here, there is no clear and

5    unmistakable delegation. Hence, if a relevant arbitration agreement exists, this

6    Court—not the arbitrator—should decide whether the current dispute falls within

7    its scope. *See infra* Section II.A.

8        **A. If any arbitration agreement survived the termination of the 2010**

9            **Import Agreement, it does not cover the current dispute.**

10       To the extent that it is relevant at all and survived the parties' termination,

11   the arbitration provision in the 2010 Import Agreement cannot reasonably be read

12   to encompass the current dispute. Although Costco boldly asserts that the

13   arbitration provision of the 2010 Import Agreement covers "'[a]ll claims and

14   disputes' that arise between the Parties," (Mot. at 6), the text of the arbitration

15   provision is not so broad.

16       Section 26.1 of the 2010 Import Agreement, entitled "Arbitration of

17   Disputes" spells out in considerable detail the scope of the disputes to be

18   arbitrated:

19           All claims and disputes that arise out of a commercial relationship and

20           (l) are between Supplier and Costco or either's affiliates, subsidiaries,

21           parents, officers, directors and/or their employees, and (2) arise out of

22           or relate to the *Agreement Documents or their subject matter*, or *any*

23           *other agreement or transaction or occurrence between Supplier and*

24           *Costco* Wholesale (including without limitation any tort or statutory

25           claim) ("Dispute"), shall be arbitrated under the Commercial

26           Arbitration Rules of the American Arbitration Association ("AAA").

27   D.I. 20-3 at 14–15. Incidentally, the abandoned 2011 Vendor Agreement

28   incorporated a set of Standard Terms that contain an arbitration provision very

Mitchell
Silberberg &
Knupp LLP

16439002.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

similar but not quite identical to Section 26.1. *See* Standard Terms, Ex. 1 § 20. To be sent to arbitration under Section 26.1, a dispute between Taylor Made and Costco must arise out of or relate to one of three things: (i) the Agreement Documents, (ii) the subject matter of the Agreement Documents, or (iii) any other agreement or transaction or occurrence between Taylor Made and Costco. The current dispute does not fit into any of those categories.

　　*(i) Agreement Documents.* The Agreement Documents are defined as the 2010 Import Agreement and various ancillary agreements relating to the purchase of goods by Costco from Taylor Made. D.I. 20-3 at 2 § 1.1. That very same definition, in the very first section of the 2010 Import Agreement, states: "Notwithstanding anything to the contrary herein, this Import Agreement pertains only to merchandise sold to Costco where Costco is the 'Importer of Record' into the United States." *Id.* Plainly, this patent-infringement suit does not involve any supply of merchandise from Taylor Made to Costco, where Costco is the importer of record into the United States, so this lawsuit does not arise out of or relate to the Agreement Documents. Sensibly, Costco does not assert otherwise.

　　*(ii) Subject Matter of the Agreement Documents.* Costco asserts that the current dispute relates to the "subject matter" of the Agreement Documents. Costco argues that the subject matter of the Agreement Documents is "golf merchandise" because that is the category of merchandise written by hand on the first page of the 2010 Import Agreement. Mot. at 7. But that overbroad reading of "subject matter" cannot be squared with the text of the 2010 Import Agreement. Notably, the word "golf" appears nowhere else in the agreement except in Taylor Made's full corporate name and website address (Taylor Made Golf Company, Inc., and www.taylormadegolf.com, respectively). The 2010 Import Agreement, on its face, is a contract governing sales of goods from Taylor Made to Costco and expressly "pertains *only* to merchandise sold to Costco where Costco is the 'Importer of Record' into the United States." D.I. 20-3 at 2 § 1.1. The "subject

matter" of the Agreement Documents cannot plausibly be read to encompass patent infringement concerning merchandise made by someone other than Taylor Made and for which Costco does not even purport to be the importer of record.

(iii) *Other Agreement or Transaction or Occurrence between Taylor Made and Costco.* Neither the patent infringement action nor the false advertising claim relates to any agreement or transaction or occurrence between Taylor Made and Costco. Taylor Made would have precisely the same causes of action if there had never been any agreements or transactions or occurrences of any kind between those companies. Costco does not identify any transaction, agreement, or occurrence between Taylor Made and Costco to which the present lawsuit relates, because there is none. Costco points out, correctly, that the clause includes torts and statutory claims (Mot. at 7), but it fails to grapple with the fact that such torts and statutory claims must relate to a transaction or agreement or occurrence *between Taylor Made and Costco.* The current dispute does not arise out of any agreement, transaction, or occurrence with Taylor Made. It arises out of the transactions between Costco and Indi Golf or some other third party, in which, together, they manufacture and sell products that infringe on Taylor Made's intellectual property rights. Taylor Made is not involved with the infringing Costco products in any way beyond being harmed by Costco's wrongdoing. In sum, the provision of the 2010 Import Agreement that defines what types of disputes are subject to arbitration—Section 26.1—does not cover the present dispute. D.I. 20-3 at 14–15. (And, for substantially the same reasons, neither does the 2011 Vendor Agreement, which incorporates a largely similar arbitration clause.)

The next section in the 2010 Import Agreement, Section 26.2, entitled "Agreement to Arbitrate," contains a laundry list of clauses that are designed to anticipate and address the issues that are commonly raised to support an argument that there was no enforceable agreement to arbitrate:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

1        Supplier acknowledges and agrees that (1) it has freely and voluntarily

2        accepted these arbitration and dispute provisions as part of the

3        negotiation of the Agreement Documents, (2) it has received

4        consideration for agreeing to arbitrate, (3) it has had the opportunity to

5        consult with counsel as to whether or not to agree to arbitration, (4)

6        the Agreement Documents are an "agreement in writing" for purposes

7        of Article II of the United Nations Convention for the Recognition

8        and Enforcement of Foreign Arbitral Awards; and (5) this agreement

9        to arbitrate covers, without limitation, any claims with respect to

10       matters relating to the distribution rights of any of the parties arising

11       under this Import Agreement or any applicable law . . . .

12  D.I. 20-3 at 15.

13  Section 26.2 is designed to improve the chances that the arbitration agreement will

14  be enforceable and not rejected as unconscionable, lacking consideration, the result

15  of a mistake, etc. (Notably, no provision corresponding to Section 26.2 is found in

16  the abandoned 2011 Vendor Agreement or in the Standard Terms incorporated into

17  the 2011 Vendor Agreement. Hence, to the extent that Costco belatedly attempts to

18  shift its arguments from the 2010 Import Agreement to the 2011 Vendor

19  Agreement, it will be unable to rely on any language resembling that in Section

20  26.2.)

21        When clause (1) of Section 26.2 of the 2010 Import Agreement says that

22  Taylor Made "has freely and voluntarily accepted *these* arbitration and dispute

23  provisions," the only arbitration provision it could be pointing back to is in Section

24  26.1. D.I. 20-3 at 14–15. Similarly, the phrase "this agreement to arbitrate" in

25  clause (5) of Section 26.2 refers to the agreement to arbitrate that was just

26  described in detail in Section 26.1. The apparent function of clause (5) is to

27  forestall arguments that the supplier did not understand that it was agreeing to

28  arbitrate disputes about distribution of the supplier's products imported by Costco

1  regardless of whether the distribution occurred under the 2010 Import Agreement

2  (and that this mistake should render the arbitration clause unenforceable).

3  Certainly, Costco can have rights to distribute merchandise supplied by Taylor

4  Made that do not arise under the 2010 Import Agreement—for example, Costco for

5  a brief period had such rights under the 2011 Vendor Agreement.

6       Costco effectively reads clause (5) of Section 26.2 not as referring back to

7  the agreement to arbitrate in Section 26.1 but rather as a second, independent

8  agreement to arbitrate, with an entirely different scope, buried in a boilerplate list

9  of anti-unconscionability clauses and without any description of applicable

10  arbitration procedures. Mot. at 7. That reading makes no sense when the language

11  is taken in context. Rather, the set of disputes to be arbitrated is set forth in Section

12  26.1, while Section 26.2 provides a list of affirmations designed to ensure that the

13  agreement in Section 26.1 will be enforceable.

14       Costco does not assert that Taylor Made's current lawsuit relates to

15  distribution rights "arising under this Import Agreement." Nor does Costco

16  explicitly assert that the current lawsuit relates to distribution rights arising under

17  any other "applicable law"; Costco is silent on precisely what distribution rights

18  are supposedly at issue and what "applicable law" they arise under. What Costco

19  says instead is: "Taylor Made's claims in this case relate to Costco's distribution

20  rights because Taylor Made's claims arise out of Costco's alleged sale of goods."

21  Mot. at 7. That is not right because sale and distribution are distinct concepts, and a

22  party can be liable for both patent infringement and false advertising without

23  actually distributing anything (and without selling anything, for that matter). *See*

24  35 U.S.C. § 271; 15 U.S.C. § 1125.

25       More fundamentally, Costco's reading of clause (5) would make it

26  impossible to reconcile Section 26.2 with Section 26.1.[3] The Supreme Court, in

27

28  [3] Costco's reading would also render the phrase "arising under this Import Agreement or any applicable law" mere surplusage; Costco treats clause (5) as if it

interpreting an arbitration agreement, has instructed that "a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63 (1995). Costco's reading does the opposite. The term "distribution rights" is not defined in the 2010 Import Agreement. But the first page of that agreement says that "[t]he terms and conditions set forth in this Import Agreement apply to every purchase, sale, shipment and delivery of Merchandise from [Taylor Made] to Costco and related transactions, unless otherwise agreed in writing and signed by both parties." D.I. 20-3 at 2 § 1.2. That is consistent with the portion of Section 26.1 that provides for arbitration of disputes relating to an "agreement or transaction or occurrence between [Taylor Made] and Costco." *Id*. at 14. In view of these two provisions, whatever "distribution rights" are being discussed in Section 26.2 are about distribution of merchandise supplied by Taylor Made to Costco. Put another way, when harmonizing the provisions of Sections 26.1 and 26.2, it makes perfect sense to read the portion of Section 26.1 limiting arbitration to disputes relating to an "agreement, transaction or occurrence between [Taylor Made] and Costco" as also limiting arbitration about distribution rights under Section 26.2. Costco's contrary reading of the two provisions makes no sense. On Costco's reading of Section 26.2, the parties agreed, in the fifth item in a list of boilerplate clauses designed to ensure enforceability of the arbitration provision, a new arbitration agreement that *obliterates* the detailed limitations of Section 26.1, including the limitation that disputes to be arbitrated must relate to an "agreement, transaction, or occurrence" between Taylor Made and Costco. It is simply not plausible that the parties to the 2010 Import Agreement, when agreeing to arbitrate disputes about

---

said "claims with respect to matters relating to distribution," full stop. But it is well settled that an interpretation of a contract that renders its provisions redundant is disfavored. *Flores v. Barr*, 934 F.3d 910, 915 (9th Cir. 2019) ("We cannot accept that the parties to the Agreement included gratuitous standards that have no practical impact . . . an interpretation which renders part of the [contract a] surplusage should be avoided.")

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

"distribution rights," were agreeing to arbitrate, years in the future, claims of patent infringement pertaining to goods supplied by companies that were not parties to the agreement.

In support of its implausible reading of clause (5), Costco invokes the Eighth Circuit's decision in *Industrial Wire Products v. Costco Wholesale Corp.*, 576 F. 3d 516 (8th Cir. 2009). But that decision, from a different judicial circuit, is not controlling, not persuasive, and not factually apposite. It is not persuasive on the meaning of clause (5) of Section 26.2 because the appellee in that case offered *no argument whatsoever* on the meaning of the language in Section 26.2, leaving Costco's arguments about the agreement completely unrebutted. *See id.* at 521 ("[Appellee] never responds to Costco's argument, nor does it provide any reason why we should ignore [Section 26.2]"[4]). The Eighth Circuit panel did not consider the function of Section 26.2 in the arbitration agreement and did not try to harmonize that section with Section 26.1 or any other provision in the contract at issue. Its failure to do so renders its analysis unpersuasive. In addition, there are key factual differences between *Industrial Wire Products* and this case that render it inapposite. *First*, in that case, the contract containing the arbitration agreement had not been superseded or abandoned by the parties, so the Eighth Circuit had no occasion to consider the impact of the contract's termination on the scope of the surviving arbitration agreement. *See supra* Section I.B. *Second*, in *Industrial Wire Products*, the hook for Costco's argument about the applicability of Section 26.2 was that the "complaint asserts that Costco has no right to distribute a product that is a 'colorable imitation' of the product Costco previously distributed" for the appellee under the very contract at issue. 576 F.3d at 521. In other words, Costco took a patented product it was distributing and proceeded to copy it without authorization. No corresponding allegation has been or could be made in this case.

---

[4] The language found in Section 26.2 of the current agreement was in Section 27.2 of the agreement at issue in *Industrial Wire Products*. *See* 576 F.3d at 521.

Mitchell Silberberg & Knupp LLP

16439002.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

Although the accused Kirkland Signature irons are indeed a "colorable imitation" of Taylor Made's P790 irons, Costco never distributed Taylor Made's P790 irons under any agreement, including the 2010 Import Agreement, or otherwise. Unlike *Industrial Wire Products*, Costco has never distributed any products for Taylor Made that would implicate the patents at issue. Therefore, unlike *Industrial Wire Products*, this is not a dispute about distribution rights; it's a dispute about profiting from other people's patented inventions without permission and without paying for the right to do so.

### B. The parties did not clearly and unmistakably agree to delegate arbitrability questions to an arbitrator.

Costco asks this Court to delegate to the arbitrator questions about the scope of the arbitration provision of the 2010 Invention Agreement. But the cases uniformly hold that courts must determine the question of arbitrability unless there is "clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318–319 (2d Cir. 2021). This standard is "demanding" and multiple circuits have held that an arbitration clause that commits "all interpretive disputes relating to or arising out of the agreement does not pass the clear and unmistakable test," where the case does not arise out of the contractual relationship. *Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502 (1st Cir. 2020) (*citing Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012)).

Costco does not attempt to meet this demanding test. Instead, it flatly argues that incorporating rules AAA alone—with no consideration of the context the contract provides—requires the court to delegate all further questions to the arbitrator. Not so. If boilerplate language agreeing to arbitrate matters "arising out of or relating to the parties' underlying contractual relationship" were sufficient to extend a delegation clause to "*all* aspects of *all* disputes between the parties," it would "flip the presumption [that the Court decides arbitrability] on its head."

Mitchell
Silberberg &
Knupp LLP

16439002.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

1  *Biller*, 961 F.3d at 510 n.7. Moreover, the reference to the AAA rules in Section

2  26.1 is expressly limited to disputes relating to an agreement, transaction, or

3  occurrence between Taylor Made and Costco, which the current dispute is not.

4        This Court should "properly address[] the delegation issue [by] applying

5  ordinary contract principles and considering all pertinent evidence" including

6  evidence about whether parties intended to litigate or arbitrate "a particular

7  category of disputes." *LAVVAN, Inc. v. Amyris, Inc.*, No. 21-1819, 2022 WL

8  4241192, at *2 (2d Cir. Sept. 15, 2022) (cleaned up). "[T]he clearer it is . . . that the

9  parties intended to arbitrate the particular dispute" the more likely they "intended

10  to arbitrate the arbitrability of that dispute." *Metro. Life Ins. Co. v. Bucsek*, 919

11  F.3d 184, 191 (2d Cir. 2019). Conversely "the clearer it is that the terms of the

12  arbitration agreement reject arbitration of the dispute, the less likely . . . the parties

13  intended . . . to arbitrate the question of arbitrability." *Id.*

14        The 2010 Import Agreement Costco relies on contains multiple limiting

15  clauses. As laid out above, in order for a claim to have been embraced by the

16  contract it must have arisen out of the commercial relationship between Taylor

17  Made and Costco and have been connected to either the Agreement Documents,

18  the subject matter of the Agreement Documents, or any other agreement or

19  transaction or occurrence between Taylor Made and Costco. *See supra* Section II.A

20  These limitations on the arbitrable claims make clear that the parties did not form

21  an arbitration agreement of unlimited scope and duration; rather, "the parties

22  consented to arbitrate a limited subset of disputes," namely those contemplated in

23  the contract—and the AAA rules are invoked for those, and only those, disputes.

24  The present patent infringement and false advertising claims are not such disputes.

25  Therefore merely referencing the "incorporation of rules that empower an

26  arbitrator to decide . . . arbitrability, standing alone, does not suffice to establish

27  the requisite clear and unmistakable . . . intent to arbitrate arbitrability." *DDK*

28  *Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 319 (2d Cir. 2021).

Mitchell
Silberberg &
Knupp LLP

16439002.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

1    Costco further fails to say where in the contract it clearly and unmistakably

2  delegates the question of arbitrability for claims that occur years later, after the

3  contractual relationship has ended, and where the claims in dispute bear absolutely

4  no relation to the 2010 Import Agreement. The Ninth Circuit found that such

5  delays, along with the tenuous connection between the contract and the dispute to

6  be strong evidence that the parties did not intend for the dispute to fall within their

7  initial contract. *Perez*, 74 F.4th at 1010. Similarly, in *Bucsek*, the Second Circuit

8  found no "clear and unmistakable" intent to delegate arbitrability, where the claim

9  was "based on events that occurred years after both parties to the dispute had

10  severed [contractual] connections." 919 F.3d at 195.

11    Costco has failed to meet its burden to show a clear and unmistakable

12  delegation of questions of arbitrability to the arbitrator. Therefore, the Court should

13  resolve questions of arbitrability rather than delegating them to an arbitrator.

14                           **CONCLUSION**

15    The 2010 Import Agreement on which Costco relies does not touch in any

16  way on the facts of the current dispute and has been both superseded and

17  abandoned. It is not plausible that the parties intended to enter an agreement that

18  would result in arbitrating any and all disputes in perpetuity, regardless of whether

19  such disputes relate to the 2010 Import Agreement at issue, especially when the

20  parties have had no direct transactions under that contract or any other one in more

21  than a decade. The Court should deny Costco's motion to compel arbitration.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    Dated: April 12, 2024           JOHN CHRISTOPHER (J.C.) ROZENDAAL
                                          BYRON PICKARD

2                                         ROBERT NIEMEIER
                                        STERNE, KESSLER, GOLDSTEIN & FOX

3                                         PLLC

4                                         KARIN G. PAGNANELLI
                                        MITCHELL SILBERBERG & KNUPP LLP

5

6

7                                By:   */s/ Karin G. Pagnanelli*
                                           Karin G. Pagnanelli (SBN 174763)

8                                            Attorneys for Plaintiff
                                           Taylor Made Golf Company, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28