Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
Eric R. Maas, Bar No. 345450
EMaas@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Ramsey M. Al-Salam, Bar No. 109506
RAlsalam@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

*Counsel for Defendant Costco Wholesale Corp.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR MADE GOLF COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORP., and SOUTHERN CALIFORNIA DESIGN COMPANY d/b/a INDI GOLF,<br><br>Defendants. | Case No. 24-CV-0212-AGS-VET<br><br>DEFENDANT COSTCO WHOLESALE CORP.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY CLAIMS IN INTERIM<br><br>Date: May 3, 2024<br>Time: 2:30 p.m.<br>Judge: Hon. Andrew G. Schopler |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 1

II. TAYLOR MADE AND COSTCO HAVE A VALID, ENFORCEABLE ARBITRATION AGREEMENT ................................... 2

    A. The 2010 Agreement was not superseded by the 2011 Agreement ............................................................................................ 2

    B. Neither Agreement was abandoned ..................................................... 4

III. THIS CASE SHOULD BE SENT TO ARBITRATION ............................... 6

    A. The Parties clearly delegated questions of arbitrability to the arbitrator ............................................................................................... 6

    B. Both the 2010 and 2011 Agreements require arbitration .................... 6

    C. Taylor Made's remaining caselaw is inapplicable ............................... 8

IV. CONCLUSION ........................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brennan v. Opus Bank*,
 796 F. 3d 1125 (9th Cir. 2015) .................................................................... 6

*MacPherson v. Franco*,
 208 P.2d 641 (Wash. 1949) ..................................................................... 3, 4

*Mod. Builders, Inc. of Tacoma v. Manke*,
 615 P.2d 1332 (Wash. Ct. App. 1980) .................................................... 4, 5

**STATUTES**

9 U.S.C. § 3 .......................................................................................................... 1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 13(a)(1)(A) .................................................................................. 8

Rule 13(a) ............................................................................................................. 8

## I. INTRODUCTION

Costco's Motion to Compel Arbitration ("Motion") is straightforward. Taylor Made and Costco are parties to a 2010[1] agreement relating to golf clubs that has never been terminated and remains in effect to this day. The contract governs the parties' relationship and contains a broad arbitration clause. That arbitration clause delegates the question of arbitrability to the arbitrator. And even if it did not delegate that issue, this dispute falls within the scope of what the Parties agreed to arbitrate, which included any "statutory" claims. Accordingly, the Court must send this matter to arbitration in accordance with the FAA. 9 U.S.C. § 3.

Taylor Made's arguments in opposition ("Opp.") have no merit. Taylor Made is incorrect that no relevant agreement to arbitrate exists. The arbitration provision in the 2010 Agreement was executed by sophisticated parties, is extremely broad, and the Agreement intentionally has no termination provision. The Agreement explicitly covers statutory claims, like those at issue here. Taylor Made argues that the Parties replaced the 2010 Agreement with the 2011 Agreement, but no such replacement occurred; the Agreements remain in effect, and in any case, both have the same arbitration clause. Taylor Made argues that the Parties abandoned their Agreements in 2013, but that ignores that Taylor Made and Costco continue to negotiate the sale of Taylor Made products, both clubs and apparel, to this day. *See* attached Declaration of Chris Taylor ("Taylor Decl.") (Costco buyer confirming that the parties continue to discuss acquisitions under the Agreements). Taylor Made argues that the 2010 Agreement does not delegate the question of arbitrability, but ignores the on-point, binding Ninth Circuit caselaw cited by Costco that holds otherwise.

---

[1] The 2010 Costco Wholesale Global Import Supplier Agreement at D.I. 20-3 is referred to herein as the "2010 Agreement." The 2011 Costco Wholesale Basic Vendor Agreement, attached as Exhibit 1 to the Declaration of Tim Ulrich in Support of Taylor Made's Opposition, at D.I. 37-1, is referred to herein as the "2011 Agreement." Collectively, these documents are referred to as the "2010 and 2011 Agreements" or "Agreements."

In view of the arbitration provisions in the Parties' 2010 Agreement and controlling law, this dispute should be referred to arbitration.

## II. TAYLOR MADE AND COSTCO HAVE A VALID, ENFORCEABLE ARBITRATION AGREEMENT

The 2010 Agreement between Costco and Taylor Made, including the arbitration agreement within it, remain in effect. As explained in Costco's opening brief, the 2010 Agreement contains a valid arbitration provision. That arbitration provision delegates the question of arbitrability to the arbitrator. But even if it did not, the present dispute falls within the scope of the arbitration provision. Thus, the Court should send this dispute to arbitration.

To avoid this straightforward conclusion, Taylor Made argues that (1) Costco and Taylor Made "superseded" that agreement with the 2011 Agreement, and that (2) that 2011 Agreement was "abandoned" in 2013, leaving the parties with no agreement setting out the terms of their relationship. Neither is true. **Both** the 2010 and 2011 Agreements remain in effect. No matter which agreement is applied to this case, the result is the same: this matter must go to arbitration.[2]

### A. The 2010 Agreement was not superseded by the 2011 Agreement

Taylor Made argues that language in the 2011 Agreement indicates that the 2010 Agreement was "superseded" or invalidated. Not so. The 2010 Agreement was directed towards imported products because the first products Taylor Made supplied to Costco were imported golf clubs, like the products at issue here. Opp. at 10. Later in the Parties' relationship, Taylor Made began supplying non-imported merchandise to Costco. *Id.* The 2011 Agreement, directed towards domestic products, allowed Taylor Made and Costco to utilize this *additional* channel of commerce. In sum, the 2010 and 2011 Agreements cover two discrete

---

[2] As acknowledged by Taylor Made, both the 2010 and 2011 Agreements contain very similar arbitration provisions. Opp. at 15-16. As discussed in more detail below, the arguments related to the applicability of the 2010 arbitration provision apply equally to the 2011 arbitration provision. *See* § III.B, *infra*.

channels of commerce and allow the Parties to continue to negotiate the supply and sale of both domestic and imported products. As Costco's buyer, Chris Taylor, explains, Taylor Made, including Taylor Made's declarant, Mr. Ulrich, and Costco continue to discuss purchases of Taylor Made merchandise to this day, with the expectation that any such acquisitions would be subject to one or both of the Parties' Agreements. Taylor Decl., ¶¶ 4-8. As he also explains, the Agreements intentionally have no termination clause. Costco negotiates purchases from vendors on an annual basis. To avoid having to renegotiate such agreements, Costco's standard agreements, like those with Taylor Made, contain no termination provision so they continue to apply to purchases even if there is a significant hiatus between purchases. *Id.*, ¶ 8.

The 2010 Agreement was never terminated and nothing in the 2011 Agreement indicates otherwise. Taylor Made argues that the "Other Forms" provision of the 2011 Agreement operates to somehow supersede the terms of the 2010 Agreement. *See* 2011 Agreement, ¶ H. But this paragraph only applies to other forms and terms discussed in the preparation of the 2011 Agreement. It explains that, as it relates to the negotiation of *the 2011* Agreement, the written instrument supersedes any terms discussed orally or in writing between the parties. This paragraph does not say that the 2011 Agreement supersedes *all other agreements* between the parties because it does not.

Taylor Made essentially argues that the 2011 Agreement operates as a novation of the 2010 Agreement. A novation "is generally defined as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation… the substitution of a new obligation for an old one between the same parties." *MacPherson v. Franco*, 208 P.2d 641, 642 (Wash. 1949). "It must have the necessary parties to the contract, a valid prior obligation to be displaced, a proper consideration, and a mutual agreement." *Id.* In the 2011 Agreement, there is no discharge of the Parties'

obligations under the 2010 Agreement. At the very least, because Costco intended that Taylor Made might, in the future, supply imported merchandise under the 2010 Agreement, there was no mutual agreement that the 2011 Agreement would replace the 2010 Agreement. *See* Taylor Decl., ¶¶ 2, 8.

### B. Neither Agreement was abandoned

Taylor Made next argues that the Parties abandoned the 2010 and 2011 Agreements because Taylor Made stopped selling products to Costco, claiming that "there has been no performance under the 2011 Vendor Agreement since 2013." Opp. at 10. But this is incorrect; Costco was selling Taylor Made golf clubs as recently as 2017 and has since negotiated with Taylor Made for the sale of other products under the 2010 and 2011 Agreements. Taylor Decl., ¶ 4. In fact, Mr. Ulrich has regularly discussed the sale of golf clubs and other golf merchandise directly with Costco, most recently just months ago. *Id.*, ¶¶ 4-6. Both Costco and Taylor Made have continuously maintained the vendor relationship that was established at the signing of the 2010 Agreement. The Parties' ongoing product sales discussions are inconsistent with Taylor Made's argument that the Parties intended to terminate the 2010 or 2011 Agreements.

But even if Taylor Made were correct that there has been no transaction under the 2010 Agreement since 2010, there is still no abandonment. Taylor Made refers generally to the law related to abandonment of a contract but does not apply the facts at hand to any of the caselaw it cites. That is because under these facts, neither the 2010 nor 2011 Agreements has been abandoned. The first case that Taylor Made cites for abandonment explains that "[u]ncommunicated, subjective intent by one party to abandon is not sufficient to release the obligations. In order for rescission to be legally operative, all parties to the contract must consent to rescission by words or objective conduct." *Mod. Builders, Inc. of Tacoma v. Manke*, 615 P.2d 1332, 1337 (Wash. Ct. App. 1980) (citations omitted). Here, there is no "evidence … to show a meeting of the minds to abandon the contract."

*Id.* Taylor Made points to no "words or objective conduct" whatsoever indicating that Costco and Taylor Made *both* intended to abandon the Parties' Agreements. Instead, the post-2013 communications support the opposite conclusion—that at least Costco believed that the Agreements would cover any future purchases from Taylor Made. *See* Taylor Decl., ¶ 8. Taylor Made's other caselaw likewise illustrates that the facts do not support abandonment. In *Monroe v. Fetzer*, the "plaintiff **stated he was no longer interested in the contract**," and the defendant subsequently employed someone else to fill the plaintiff's role. 350 P. 2d 1012, 1014 (Wash. 1960) (emphasis added). Here, Taylor Made points to no such statement by Costco (or Taylor Made) showing a meeting of the minds to abandon the 2010 Agreement, and the Parties continued to directly discuss the possibility of Costco selling Taylor Made products. In *Schoneman v. Wilson*, the court noted that "abandonment is premised upon the concept of mutual rescission of the contract as evidenced by the conduct, as opposed to words, of the parties." 785 P.2d 845, 849 (Wash. Ct. App. 1990). "[T]he primary element to be established is an actual intent to relinquish or part with the right or rights claimed to be abandoned." *Id.* (citing *Shew v. Coon Bay Loafers, Inc.*, 455 P.2d 359 (Wash. 1969)). Here, where the Parties continued to discuss the sale of goods under the Agreements up until as recently as a few months before the filing of this lawsuit (Taylor Decl., ¶¶ 4, 6), the Parties have not expressed any intent to "relinquish or part with the" rights and obligations agreed to in the 2010 and 2011 Agreements.

The Court should reject Taylor Made's argument that the 2010 and 2011 Agreements have been abandoned. The Parties have continued to operate under these agreements in the years following their execution without ever expressing an intent to abandon them. Thus, the arbitration provision appearing in the 2010 Agreement (and 2011 Agreement) still binds the Parties.

### III. THIS CASE SHOULD BE SENT TO ARBITRATION

#### A. The Parties clearly delegated questions of arbitrability to the arbitrator

Costco explained in its opening brief that virtually every circuit—the Ninth included—holds "that the incorporation of the AAA rules constitutes clear and unmistakable evidence that the contracting parties have agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F. 3d 1125, 1130 (9th Cir. 2015). (alteration incorporated) (citation omitted). Language like the text in the 2010 and 2011 Agreements is considered incorporation by reference of the AAA rules. *Id.* at 1128.

Taylor Made cites only cases from other circuits to support its claim that the incorporation of the AAA rules is insufficient to clearly delegate questions of arbitrability to the arbitrator. Conspicuously absent from Taylor Made's opposition is any attempt to distinguish, rebut, or otherwise analyze any of the binding Ninth Circuit caselaw cited by Costco on this point. Taylor Made does not even mention a single case. Its failure to do so is an implicit acknowledgement that the law in this Circuit is clear: incorporation by reference of the AAA rules, like the Parties did in the 2010 and 2011 Agreements, clearly delegates arbitrability to the arbitrator.

Since a valid arbitration agreement exists between the Parties and the Parties delegated questions of arbitrability to the arbitrator, the Court should compel arbitration.

#### B. Both the 2010 and 2011 Agreements require arbitration

For the reasons set forth in Costco's opening brief, the 2010 Agreement's arbitration provision requires arbitration. But even if the 2011 Agreement was the only operable agreement between the Parties, this matter still must be referred to

arbitration. The 2011 Agreement has an even broader arbitration clause than the 2010 Agreement and the same incorporation of the AAA Rules.

The 2011 Agreement states: "All claims and disputes," not just those "that arise out of a commercial relationship," like the 2010 Agreement, "that (1) are between [Taylor Made] and Costco Wholesale … and (2) arise out of or relate to the Agreement Documents or their subject matter, interpretation, performance or enforcement, or any other agreement, transaction, or occurrence between Vendor and Costco Wholesale (including without limitation any tort or statutory claim) ("Dispute") shall be arbitrated under the Commercial Arbitration rules of the American Arbitration Association." 2011 Agreement, ¶ 20. This lawsuit is certainly a "claim or dispute" between Taylor Made and Costco, and it arises out of or relates to a transaction or occurrence between Costco and Taylor Made. Thus, an arbitration agreement exists between the Parties, and this dispute falls within its scope.

Again, this conclusion is straightforward. Yet Taylor Made devotes pages of its opposition to dissecting the arbitration provision in the Parties' 2010 Agreement. First, Taylor Made argues that this *lawsuit* does not arise out of a "transaction or occurrence" between Taylor Made and Costco, so it does not fall within the scope of the arbitration clause. But there must be a "transaction or occurrence" for there to be a lawsuit. This lawsuit arises out of Costco's sales of allegedly infringing golf clubs. Those sales, which Taylor Made repeatedly claims infringe its patents and damage Taylor Made, such that "Taylor Made has suffered irreparable harm and impairment … and … will continue to suffer irreparable harm and impairment ...," certainly constitute "occurrences." Compl., ¶¶ 56, 57, 62, 63, 68, 69, 74, 75, 80, 81, 86-88. Further, the statutory claim of patent infringement is an "occurrence" between Costco and Taylor Made—no other party has accused Costco of infringement. Taylor Made's allegations of patent infringement and harm are

inconsistent with its argument that there has been no "transaction or occurrence" between Taylor Made and Costco giving rise to this lawsuit.[3]

Taylor Made discounts the "any tort or statutory claim" language by stating that "such torts and statutory claims must relate to a transaction or agreement or occurrence *between Taylor Made and Costco*." Opp. at 17. Costco agrees. Taylor Made has alleged a statutory occurrence between Costco and it—that Costco has infringed Taylor Made's patents. Taylor Made's reference to "transactions between Costco and Indi Golf or some other third party" are irrelevant. Those parties have not made any statutory claim against Costco. This case falls well within the Parties' arbitration clause.

### C. Taylor Made's remaining caselaw is inapplicable

Taylor Made relies heavily on *Jackson v. Amazon.com, Inc.* to support the proposition that the instant case is not within the scope of the Parties' arbitration provision. 65 F. 4th 1093 (9th Cir. 2023). Unlike this case, the arbitration clause at issue in *Jackson* did not delegate arbitrability to the arbitrator. *Id.* at 1098. Also, unlike this case, the agreement in *Jackson* was between Amazon and an individual delivery driver. *Id*. at 1095. The plain language of the arbitration agreement limited its scope to "any dispute or claim … arising out of or relating in any way to this Agreement." *Id.* (alteration in original). The court held in that case that the arbitration clause was thus limited to disputes relating to that agreement. *Id.* at 1103.

Here, the Court is presented with two sophisticated entities that entered into a much broader arbitration agreement than that in *Jackson*. As discussed above, the Parties' arbitration provision here is not limited just to claims arising out of the

---

[3] For example, Rule 13(a) provided that a party must plead a counterclaim in an answer if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). If, after the conclusion of this case, Costco filed a new action for a declaratory judgment of noninfringement in invalidity of the patents-in-suit, Taylor Made would almost certainly move to dismiss because those counterclaims arise out of the same transaction or occurrence as in this Complaint, and are thus compulsory.

performance of the parties' contract, but "any … agreement, transaction, or occurrence between [Taylor Made] and Costco Wholesale (including without limitation any tort or statutory claim)." 2010 Agreement, ¶ 26.1.

Taylor Made also relies on *Perez v. Discover Bank* but ignores the distinguishing facts in that opinion. 74 F. 4th 1003 (9th Cir. 2023). The reasoning in *Perez* turned mainly on the identities of the contracting parties. *Id.* at 1010. The arbitration agreement in that case was entered into by plaintiff, an individual student loan borrower, and Citibank. *Id.* at 1006. Plaintiff's loan was later purchased by defendant Discover Bank. *Id.* Plaintiff sued Discover because Discover allegedly discriminated against plaintiff by denying a new loan application. *Id.* at 1007. The court found it would be absurd to find that plaintiff and *Discover* had formed an agreement to arbitrate a discrimination claim over a new loan application via an agreement with *Citibank*. *Id.* at 1011. Here, on the other hand, Costco and Taylor Made are the parties to the original arbitration agreement. Costco and Taylor Made explicitly agreed to arbitrate claims between them arising out of any transactions or occurrences, including tort or statutory claims like the patent claims at issue here.

## IV.   CONCLUSION

For the reasons stated herein and on opening, Costco respectfully requests this Court grant Costco's Motion, stay this matter, and refer the Parties' dispute to arbitration in accordance with the Parties' Agreement.

Dated: April 26, 2024

**PERKINS COIE LLP**

By: */s/ Ramsey M. Al-Salam*
Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
Eric R. Maas, Bar No. 345450
EMaas@perkinscoie.com
Ramsey M. Al-Salam, Bar No. 109506
RAlsalam@perkinscoie.com

*Counsel for Defendant Costco Wholesale Corp.*