JOHN CHRISTOPHER (J.C.) ROZENDAAL (*pro hac vice*)
  jcrozendaal@sternekessler.com
BYRON PICKARD (*pro hac vice*)
  bpickard@sternekessler.com
ROBERT NIEMEIER (*pro hac vice*)
  rniemeier@sternekessler.com
STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.
1101 K Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 371-2600
Facsimile: (202) 371-2540

KARIN G. PAGNANELLI (SBN 174763)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff
Taylor Made Golf Company, Inc.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| TAYLOR MADE GOLF COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> COSTCO WHOLESALE CORP., AND SOUTHERN CALIFORNIA DESIGN COMPANY d/b/a INDI GOLF, and SM Global, LLC, <br><br> Defendants. | CASE NO. 3:24-cv-00212-AGS-VET <br><br> Judicial Officer: Andrew G. Schopler <br> Courtroom: 5C <br><br> **SUPPLEMENTAL DECLARATION OF TIM ULRICH IN SUPPORT OF TAYLOR MADE'S OPPOSITION TO COSTCO'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS IN INTERIM** |

DECLARATION

I, Tim Ulrich, declare as follows:

1. As stated in my earlier declaration, I am the Sales Manager of Mass Merchant Accounts at Taylor Made Golf Company, Inc. ("Taylor Made"). I joined Taylor Made in 2006 and have held my current role since 2006. My responsibilities include sales management of large national accounts, such as Costco, BJs, Walmart, Target, Sam's Club, and other sporting goods accounts.

2. I make this supplemental declaration in further support of Taylor Made's Opposition to Costco Wholesale Corp.'s Motion to Compel Arbitration (D.I. 37). I am over the age of 18 and, unless otherwise indicated, I have personal knowledge of the facts related herein and could testify to them competently if called upon to do so.

3. I have reviewed Chris Taylor's Declaration (D.I. 40-1), submitted by Costco in support its Motion to Compel Arbitration (D.I. 40).

4. In my prior declaration, I stated that, "[s]tarting in 2013, Taylor Made stopped supplying merchandise directly to Costco…and instead began to sell merchandise to an independent third-party distributor that would, in turn, sell to Costco and other large retailers. Since 2013, neither Taylor Made, nor Costco, has attempted to make any direct transactions under either the 2010 Import Agreement or the 2011 Vendor Agreement." D.I. 37-1, ¶ 11.

5. Mr. Taylor's Declaration does not dispute this fact, but it states, "[f]or example, Costco sold Taylor Made putters in 2017 and Costco *Canada* currently sells Taylor Made RBZ golf balls." D.I. 40-1, ¶ 4 (emphasis added).

6. While it may be true that Costco sold Taylor Made putters to its customers in 2017, it is not the case that Taylor Made sold to Costco any putters in or about 2017. Instead, as stated in my earlier Declaration (D.I. 37-1), the putters that Mr. Taylor references were likely sourced by Costco from U.S. Merchants. I know this because, as I stated earlier, Taylor Made ceased any sales to Costco after 2013 and began selling any golf merchandise to an independent distributor.

1
DECLARATION

7.     I have reviewed Taylor Made's records and confirmed that the putters referenced by Mr. Taylor are consistent with this practice. In particular, Taylor Made sold the referenced putters to U.S. Merchants, as shown by the attached invoices, Exhibits 1 & 2, and did not sell them to Costco. In reviewing Taylor Made's records, I did not see any evidence of a sale of a putter, or any other item, by Taylor Made to Costco after 2013, including in the 2017 period.

8.     It may also be true that Costco *Canada* has sold Taylor Made golf balls to Costco *Canada*'s customers. But I understand that the "Costco *Canada*" entity mentioned by Mr. Taylor is a different entity from the U.S. company Costco Wholesale Corp. and "Costco *Canada*" is not a party to either the 2010 Import Agreement or 2011 Vendor Agreement.

9.     Mr. Taylor's declaration also mentioned recent discussion between Costco and Taylor Made. While it is true that Taylor Made has recently communicated with Costco to discuss Costco's acquisition of Taylor Made products, these discussions were preliminary and did not conclude with any transactions being agreed to or fulfilled. Because these conversations were preliminary, they did not touch on how, if at all, any transaction would be covered by any agreement. Had discussions proceeded to the point of Costco purchasing any Taylor Made goods, Taylor Made would have referred Costco to an independent third-party distributor to transact for any such sale.

10.    Lastly, Mr. Taylor states that he personally understands that the 2010 Import Agreement and the 2011 Vendor Agreement would apply to any purchase of Taylor Made products—even when Costco purchased products from U.S. Merchants: "In all of my discussions with Taylor Made representatives, whether the product was to be supplied from U.S. Merchants or Taylor Made directly, I understood the 2010 Agreement or 2011 Agreement would apply to the purchase of Taylor Made products." D.I. 40-1, ¶ 8. I certainly did not share this

1  understanding. And I am not aware of any instance in which Mr. Taylor (or any
2  Costco representative) communicated this understanding to Taylor Made.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 |     I declare under penalty of perjury that the foregoing is true and correct to the
2 | best of my knowledge.
3 |
4 | Signed at _Carlsbad_, California, April 29, 2024.
5 |
6 |
7 |
8 |                                  Tim Ulrich

# Exhibit 1

**Exhibit 1**
**Page 5**



**US MERCHANTS FINANCIAL GROUP, INC.**
8737 Wilshire Blvd. • Beverly Hills, CA 90211
310-228-4000 • FX: 310-652-9905

# Purchase Order

| | |
|---|---|
| Page No.: | 1 of 1 |
| Purchase Order: | 74866  OP |
| Date: | 1/23/2017 |
| Branch/Plant: | 200 |
| Ordered Date: | 1/23/2017 |
| Requested Date: | 2/20/2017 |
| Freight: | . |

**Vendor**
TAYLORMADE GOLF COMPANY
P.O. BOX 56431
LOS ANGELES CA 90074-6431

**Ship To**
ONTARIO WAREHOUSE
1625 S. PROFORMA AVE
Ontario CA 91761

| Line No./Rev. | Item Number | Description | Ordered | UOM | Unit Price | UOM | Extended Price | Request Date | Order No. | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.000  0 | 521324 | P TaylorMade Spider Putter 34" | 1,400 | EA | ▮ | EA | ▮ | 2/20/2017 | | |
| 2.000  0 | 521316 | P TaylorMade Spider Putter 35" | 1,000 | EA | ▮ | EA | ▮ | 2/20/2017 | | |
| | | | | | | | **Sub Total:** ▮ | | | |

*US Merchants*
*Michael Goldblatt*
*Purchasing Manager*

| | | | |
|---|---|---|---|
| ☞ **IMPORTANT!** By either commencing performance or executing this Order, Vendor accepts all of the attached terms. This Order, including the attached Terms and Conditions, are accepted. | **Terms:** Net 90 Days  **Tax Rate:** *NA* | **Sales Tax:** .00  **Order Total:** ▮ | |

**Exhibit 1 Page 6**

R43500.fpj2 (Sept/2002)

**US MERCHANTS FINANCIAL GROUP, INC.**
8737 Wilshire Blvd. • Beverly Hills, CA 90211
310-228-4000 • FX: 310-652-9905

**Purchase Order Terms and Conditions**

All purchases of products and/or services (collectively "Goods") by U.S. Merchants Financial Group, Inc., its parent or its affiliates (collectively, "Buyer") are subject to and conditioned on the terms and conditions set forth herein and on the front side of Buyer's purchase order (collectively "Terms"), and on no other terms and conditions unless expressly agreed to in a writing signed by a corporate officer of Buyer. The seller(s) of the Goods to Buyer is referred to as "Vendor." THIS ARRANGEMENT IS BETWEEN BUYER AND VENDOR ONLY, AND VENDOR AGREES THAT BUYER'S PRINCIPALS AND AGENTS ARE NOT LIABLE UNDER ANY CIRCUMSTANCES. Buyer's orders for Goods, including all of Buyer's purchase orders, requests for quotation and any other form for placing orders, are referred to as "Orders." Invoices, bills of lading, quotations and any other form used by Vendor for billing or pricing are referred to as "Invoices." All Invoices are subject to the Terms. Buyer objects to and rejects any terms or conditions in Invoices that are in addition to or different from these Terms. If Invoices are conditioned on Buyer's acceptance of Vendor's terms and conditions, and the terms of quantity and price of the Goods in an Order are the same as those in Vendor's Invoices, then all additional or different terms in Vendor's Invoices are rejected, and Buyer's acceptance shall create an agreement between Buyer and Vendor on these Terms. Vendor's agreement to these Terms shall also occur upon (i) Vendor's commencement of performance on any Order or (ii) Vendor's signature on any Order. If any Terms are unacceptable, Vendor must not begin performance. Documents attached by Buyer to its Order are part of the Terms.

1. Goods must conform strictly to each Order and Buyer's specifications. Goods must be first class quality. Time is of the essence. All Goods must be delivered at the exact times and quantities specified. Delivery may not be in installments unless requested on the front side of an Order. Buyer rejects excess or insufficient quantities, Buyer is under no obligation to return or pay for excess quantities, and Vendor agrees to make up any insufficient quantities. If deliveries do not meet Buyer's schedule, or if any Goods are non-conforming, Buyer may, without limiting its rights or remedies, direct further or alternate production and shipping, and Vendor will pay all additional costs. If Vendor may not be able to perform by the date Buyer specifies, Vendor must notify Buyer immediately so Buyer has sufficient time to decide whether to cancel all or part of an Order without further obligation by Buyer and with Vendor compensating Buyer for all damages.

2. Payment for Goods is only due within the number of days specified on the front side of the Order after the last event of the following to occur: receipt of Vendor's Invoice, delivery of all Goods exactly as Buyer specifies in the Order, or full payment by third party customers in the pass through arrangement. (Payment is also subject to all the terms of this Order, including those set forth in Section 3 below). Payment shall not constitute approval or acceptance of Goods by Buyer, and Buyer's right of inspection survives payment. All Goods are subject to inspection and testing at times and places Buyer determines, both before and after delivery. Vendor will permit access to its facilities to verify the quality of work, records and materials, and Buyer may inspect all licenses, permits and testing records. Any discount offered by Vendor shall begin from when Goods are received by Buyer. Inspections and payments by Buyer prior to delivery, including payments to obtain discounts, shall not constitute acceptance nor constitute a waiver or release of any Terms.

3. IF ANY GOODS ARE NON-CONFORMING, IF THERE ARE ANY RETURNS BY ANYONE (BUYER, CUSTOMERS OR END USERS) FOR ANY REASON (INCLUDING DEFECTS, END USER COMPLAINTS OR THE FAILURE TO RESELL SOME GOODS), IF VENDOR OFFERS ANY MARKDOWN OR PROMOTION, AND/OR IF VENDOR BREACHES ANY MATERIAL PROMISES, THEN: (A) BUYER MAY WITHHOLD ALL PAYMENTS UNTIL THERE IS A RESOLUTION OF THE COMPLETE EXTENT OF ALL DEFECTS, RETURNS AND VENDOR'S BREACHES AS WELL AS A RESOLUTION OF THE NET AMOUNT THAT WILL BE OWED FOLLOWING CREDITS FOR DEFECTS, RETURNS AND VENDOR'S BREACHES; AND (B) BUYER WILL RECEIVE FULL CREDIT FOR ALL RETURNS, DEDUCTIONS/DEBITS, MARKDOWNS BY CUSTOMERS, HANDLING AND FREIGHT CHARGES BY CUSTOMERS, AND BUYER'S 18% HANDLING CHARGE (WHICH IS CALCULATED ON THE TOTAL AMOUNT CHARGED BY CUSTOMERS FOR RETURNS, MARKDOWNS AND/OR OTHER DEDUCTIONS). BUYER'S 18% HANDLING CHARGE APPLIES REGARDLESS OF WHETHER RETURNS ARE PHYSICALLY HANDLED BY BUYER OR WHETHER CUSTOMERS SEND RETURNS BACK DIRECTLY TO VENDOR. UNLESS THE FRONT OF THIS ORDER EXPRESSLY STATES "NOT A PASS THROUGH": (A) ORDERS ARE PART OF A PASS THROUGH ARRANGEMENT (WHERE VENDOR ARRANGES FOR BUYER'S RESALES OF PRODUCT TO CUSTOMERS); AND (B) VENDOR SHALL BE FULLY RESPONSIBLE FOR ALL ISSUES WITH RESALES, INCLUDING PAYING BUYER'S STORAGE CHARGES ($30/PALLET/MONTH), PAYING BUYER'S HANDLING CHARGES FOR DELAYS BY CUSTOMERS IN ACCEPTING GOODS (18% OF THE AMOUNT OF THE GOODS), AND COMPENSATING BUYER FOR ALL UNUSED PACKAGING AND LOST PROFITS.

Exhibit 1
Page 7

**US MERCHANTS FINANCIAL GROUP, INC.**
8737 Wilshire Blvd. • Beverly Hills, CA 90211
310-228-4000 • FX: 310-652-9905

**Purchase Order Terms and Conditions**

4. Prices of Goods are those stated on the front side of the Order. Vendor agrees that such prices will not be less favorable than those charged to other of Vendor's customers for similar Goods at any time within a two-year period from the date of sale to Buyer. Vendor agrees to credit Buyer for all costs associated with any overpayment/overcharge. Prices for Goods remain firm despite any delays in delivery or acceptance. All insurance, packaging, storage and transportation costs are borne by Vendor. Unless an Order otherwise states, no charge will be allowed for tooling, printing plates, packing or shipping. The price specified in an Order includes all taxes, fees and other charges, and Buyer is not obligated to pay any other charges/amounts in any form.

5. If any Goods do not meet Buyer's specifications or otherwise do not strictly conform to the Order, Buyer may reject all or any part of such Goods. Any Goods rejected after delivery may, at Buyer's option, (a) be returned to Vendor for reimbursement, credit, set-off, replacement or correction, at Vendor's sole expense, or (b) Buyer may correct or replace such Goods, at Vendor's sole expense, without obligation to return defective Goods. Acceptance of any portion of any delivery from Vendor shall not be deemed to constitute a waiver of Buyer's right to discover damaged Goods, and in no event will any acceptance of a portion of Goods be deemed an acceptance of any portion not specifically and expressly accepted. Vendor will credit Buyer for damaged, mishandled, or defective Goods.

6. IN ADDITION TO ANY OTHER WARRANTIES, VENDOR EXPRESSLY WARRANTS THAT ALL GOODS WILL (i) BE SALABLE TO ANYONE, EVEN THOSE OUTSIDE ANY EXPRESSLY DESIGNATED OR AUTHORIZED CHANNELS OF DISTRIBUTION, AND BE FREE FROM DEFECTS IN OR CLAIMS AGAINST GOOD TITLE, (ii) CONFORM TO BUYER'S SPECIFICATIONS AND ORDER, (iii) BE FREE FROM DEFECTS IN MATERIAL, DESIGN AND WORKMANSHIP, (iv) BE MERCHANTABLE IN ALL RESPECTS, (v) BE FIT FOR THE PARTICULAR PURPOSE FOR WHICH BUYER INTENDS TO USE THE GOODS, (vi) COMPLY WITH ALL COURT ORDERS, JUDGMENTS, AGREEMENTS, LAWS AND REGULATIONS OF ANY KIND, (vii) NOT INFRINGE ON ANY OTHER PARTY'S RIGHTS, INCLUDING RIGHTS UNDER ANY CONTRACTS, PATENTS, TRADEMARKS, TRADES DRESS, TRADE NAMES, COPYRIGHTS, RIGHTS OF PRIVACY, TRADE SECRETS AND OTHER INTELLECTUAL PROPERTY RIGHTS, (viii) BE PROVIDED IN COMPLIANCE WITH OSHA (29 U.S.C. 651), CPSA (5 U.S.C. 5314, 5315 AND 15 U.S.C. 2051-2081) AND ALL OTHER SAFETY AND LABOR RULES. ANY ATTEMPT BY VENDOR TO EXCLUDE, LIMIT OR DISCLAIM THE FOREGOING, WHETHER IN VENDOR'S ACKNOWLEDGMENT, INVOICE OR OTHERWISE, IS NULL AND VOID.

7. Unless otherwise stated in this Order, the applicable Order number shall appear on Vendor's tags, containers, bills of lading, packing lists and Invoices. All corrugated items must show Buyer's name. Shipments shall be accompanied by a packing slip describing the contents, weight and quantity of Goods in each package. If an Invoice does not reflect the correct Order number, then payment terms do not commence until receipt of a revised Invoice. Any Goods Buyer specifies as requiring a pallet must be shipped on 4-Way GMA # 1 hardwood pallet, and non-conformity in this respect is subject to a debit at the actual pallet rate plus a $10 handling fee per pallet.

8. VENDOR'S EXCLUSIVE REMEDY AND BUYER'S SOLE LIABILITY IN ANY LAWSUIT, CLAIM OR LOSS THAT RELATES TO OR ARISES OUT OF ANY TRANSACTION, WHETHER BASED ON CONTRACT, TORT OR OTHER THEORY, SHALL BE LIMITED TO BUYER'S SPECIFIED PRICE FOR THE GOODS. IN NO EVENT SHALL BUYER BE LIABLE FOR ANY PUNITIVE, CONSEQUENTIAL OR BUSINESS INTERRUPTION DAMAGES, REGARDLESS OF CAUSE OR FORM AND EVEN IF BUYER IS ON PRIOR NOTICE. ONLY IF ANY PRECEDING PART OF THIS SECTION IS UNENFORCEABLE, THEN THIS SECTION SHALL NOT RELIEVE BUYER FROM LIABILITY FOR GROSS NEGLIGENCE OR WILLFUL ACTS.

9. Until Buyer accepts delivery, Vendor assumes all risk of loss to the Goods, will secure the Goods and will obtain insurance over the Goods. Acts of God, war, riot, embargoes, fire, explosions, strikes and any causes beyond Buyer's complete control are grounds for Buyer to terminate or suspend delivery, without penalty.

10. Buyer may, at any time, notify Vendor in writing of changes in: (a) tooling, drawings, designs or specifications, where the Goods to be furnished are to be specially manufactured for Buyer; (b) method of shipment or packing; (c) place of delivery; and (d) delivery schedule. Vendor will promptly comply with such changes. If such changes increase or decrease the cost, or the time required, for Vendor's performance, an equitable adjustment will be made in the price or delivery schedule or both, but only if a written claim by Vendor for adjustment under this Section is asserted within five (5) days from Buyer's notice of the changes. Failure to agree on a claim for an equitable adjustment may be resolved by litigation, but Vendor must still promptly perform this Order as changed.

**Exhibit 1**
**Page 8**

2

**US MERCHANTS FINANCIAL GROUP, INC.**
8737 Wilshire Blvd. • Beverly Hills, CA 90211
310-228-4000 • FX: 310-652-9905

**Purchase Order Terms and Conditions**

11. Buyer has the exclusive right, title and interest in and to all artwork, inventions, processes, designs, molds, tooling, printing plates, dies, die lines and other properties, made or acquired by Vendor in fulfilling an Order (collectively "Designs and Tools") whether or not such Designs and Tools were charged to or paid for by Buyer. Vendor shall transmit to Buyer all Designs and Tools within 48 hours after Buyer's request. If Vendor fails to transmit such Designs and Tools within 48 hours after Buyer's request, Vendor agrees to reimburse Buyer any expenses incurred by Buyer in making new Designs and Tools.

12. Vendor shall not disclose any nonpublic, confidential or trade secret information obtained from Buyer. If any Goods contain a trademark, patent, character, design, name, symbol and/or other proprietary material owned, copyrighted or licensed by Buyer ("Licensed Material"), Vendor agrees that Licensed Material is in no way Vendor's property. Vendor shall not use in any way any of the Designs and Tools, or any trademarks, patents, trade names, copyrighted works or samples of Buyer for any purpose other than to perform this Order. Vendor and Buyer acknowledge that they are not agents of each other.

13. Vendor shall defend (counsel selected by Buyer and paid by Vendor), indemnify and hold harmless Buyer and Buyer's officers, directors, employees and agents, from all claims, losses, demands, liabilities, actions, damages, settlements, and expenses in any way arising out of or related to any actual or alleged: (a) defect in design, material or workmanship of the Goods; (b) breach by Vendor of any of these Terms; (c) personal injury, death or property damage in connection with the Goods; (d) infringement or misappropriation of any patent, copyright, trade name, trade dress or trade secret regarding the Goods; (e) acts or omissions of Vendor; and (f) price discrimination or price fixing regarding the Goods. Buyer may control any defense and is authorized to settle any claim/lawsuit.

14. The agreement between Buyer and Vendor has been made in Los Angeles, California, requires performance in Los Angeles, California, and all rights and duties arising out of or relating in any way to any Order or transaction(s) between the parties, including any and all disputes as to the legality, interpretation, enforcement and performance of the Terms, shall be governed by, construed and enforced in accord with the laws of the State of California without regard to any conflict of laws rules. VENDOR AGREES THAT SERVICE OF PROCESS ON VENDOR MAY BE EFFECTED ON VENDOR EITHER BY SERVICE ON THE SECRETARY OF STATE OF CALIFORNIA OR BY EMAIL TO ANY ACTIVE/VALID EMAIL ADDRESSES USED IN CORRESPONDENCE BETWEEN THE PARTIES DURING THE COURSE OF THEIR BUSINESS RELATIONSHIP, WITH SUCH EMAIL SERVICE CONSTITUTING PERSONAL, HAND SERVICE ON THE DATE OF TRANSMISSION. VENDOR AGREES THAT VENUE AND JURISDICTION FOR ANY AND ALL DISPUTES WITH BUYER SHALL EXCLUSIVELY LIE WITH A COURT OF COMPETENT JURISDICTION LOCATED IN THE COUNTY OF LOS ANGELES, CALIFORNIA.

15. Vendor's rights and duties may only be assigned upon Buyer's prior written consent. The rights and duties hereunder are binding upon and inure to the benefit of the parties, their respective successors, Buyer's assigns and Vendor's permitted assigns. The rights and duties hereunder shall survive the termination of the parties' agreement and shall not be deemed waived, terminated or merged by Buyer's acceptance of performance. Buyer's failure to strictly enforce any Terms, or to exercise any rights, shall not constitute a waiver of Buyer's rights to strictly enforce such Terms or to exercise such rights thereafter. The waiver by Buyer of any default or breach must be specifically and expressly agreed to in writing and signed by a corporate officer of Buyer, and any such waiver shall not operate as a waiver of any other default or breach, even of the same kind. To the extent Buyer has waived any rights or Terms, such waiver shall not be deemed or construed as a further or continuing waiver. Buyer's rights and remedies are cumulative and in addition to any rights and remedies at law or in equity.

16. These Terms constitute the entire agreement between the parties. Vendor approves the Terms after review by its legal counsel or waives its right to such review. There shall be no right to attorneys' fees on any claims related to a breach of these Terms, the parties' promises and/or the transactions between the parties. If any term herein is to any extent illegal, otherwise invalid, or incapable of being enforced, then such term shall be excluded to the extent of such invalidity or unenforceability, all other terms hereof remain in full force and effect, and to the extent permitted and possible, the invalid or unenforceable term shall be deemed replaced by a term that is valid and enforceable that comes closest to expressing the intention of such invalid or unenforceable term. If application of the preceding sentence materially and adversely affects the economic substance of the transaction, then the party adversely impacted is entitled to equitable compensation for such adverse impact, provided the reason for the invalidity or unenforceability of a term is not due to serious misconduct by the party seeking such compensation.

Exhibit 1
Page 9
3

# Exhibit 2

Exhibit 2
Page 10

# US MERCHANTS FINANCIAL GROUP, INC.

8737 Wilshire Blvd. • Beverly Hills, CA 90211
310-228-4000 • FX: 310-652-9905

# Purchase Order

| | |
|---|---|
| Page No.: | 1 of 1 |
| Purchase Order: | 74867  OP |
| Date: | 1/23/2017 |
| Branch/Plant: | 200 |
| Ordered Date: | 1/23/2017 |
| Requested Date: | 2/20/2017 |
| Freight: | . |

**Vendor**
TAYLORMADE GOLF COMPANY
P.O. BOX 56431
LOS ANGELES CA 90074-6431

**Ship To**
ONTARIO WAREHOUSE
1625 S. PROFORMA AVE
Ontario CA 91761

| Line No./Rev. | Item Number | Description | Ordered | UOM | Unit Price | UOM | Extended Price | Request Date | Order No. | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.000   0 | 521324 | P TaylorMade Spider Putter 34" | 100 | EA | ■ | EA | ■ | 2/20/2017 | | |
| 2.000   0 | 521316 | P TaylorMade Spider Putter 35" | 100 | EA | ■ | EA | ■ | 2/20/2017 | | |
| | | | | | | | **Sub Total:** ■ | | | |

US Merchants

*[signature]*

Michael Goldblatt
Purchasing Manager

☞ **IMPORTANT!** By either commencing performance or executing this Order, Vendor accepts all of the attached terms. This Order, including the attached Terms and Conditions, are accepted.

| Terms: | Net 90 Days |
|---|---|
| Tax Rate: | *NA* |

| Sales Tax: | .00 |
|---|---|
| Order Total: | ■ |

Exhibit 2
Page 11

R43500.fpj2 (Sept/2002)

**Purchase Order Terms and Conditions**

All purchases of products and/or services (collectively "Goods") by U.S. Merchants Financial Group, Inc., its parent or its affiliates (collectively, "Buyer") are subject to and conditioned on the terms and conditions set forth herein and on the front side of Buyer's purchase order (collectively "Terms"), and on no other terms and conditions unless expressly agreed to in a writing signed by a corporate officer of Buyer. The seller(s) of the Goods to Buyer is referred to as "Vendor." THIS ARRANGEMENT IS BETWEEN BUYER AND VENDOR ONLY, AND VENDOR AGREES THAT BUYER'S PRINCIPALS AND AGENTS ARE NOT LIABLE UNDER ANY CIRCUMSTANCES. Buyer's orders for Goods, including all of Buyer's purchase orders, requests for quotation and any other form for placing orders, are referred to as "Orders." Invoices, bills of lading, quotations and any other form used by Vendor for billing or pricing are referred to as "Invoices." All Invoices are subject to the Terms. Buyer objects to and rejects any terms or conditions in Invoices that are in addition to or different from these Terms. If Invoices are conditioned on Buyer's acceptance of Vendor's terms and conditions, and the terms of quantity and price of the Goods in an Order are the same as those in Vendor's Invoices, then all additional or different terms in Vendor's Invoices are rejected, and Buyer's acceptance shall create an agreement between Buyer and Vendor on these Terms. Vendor's agreement to these Terms shall also occur upon (i) Vendor's commencement of performance on any Order or (ii) Vendor's signature on any Order. If any Terms are unacceptable, Vendor must not begin performance. Documents attached by Buyer to its Order are part of the Terms.

1. Goods must conform strictly to each Order and Buyer's specifications. Goods must be first class quality. Time is of the essence. All Goods must be delivered at the exact times and quantities specified. Delivery may not be in installments unless requested on the front side of an Order. Buyer rejects excess or insufficient quantities, Buyer is under no obligation to return or pay for excess quantities, and Vendor agrees to make up any insufficient quantities. If deliveries do not meet Buyer's schedule, or if any Goods are non-conforming, Buyer may, without limiting its rights or remedies, direct further or alternate production and shipping, and Vendor will pay all additional costs. If Vendor may not be able to perform by the date Buyer specifies, Vendor must notify Buyer immediately so Buyer has sufficient time to decide whether to cancel all or part of an Order without further obligation by Buyer and with Vendor compensating Buyer for all damages.

2. Payment for Goods is only due within the number of days specified on the front side of the Order after the last event of the following to occur: receipt of Vendor's Invoice, delivery of all Goods exactly as Buyer specifies in the Order, or full payment by third party customers in the pass through arrangement. (Payment is also subject to all the terms of this Order, including those set forth in Section 3 below). Payment shall not constitute approval or acceptance of Goods by Buyer, and Buyer's right of inspection survives payment. All Goods are subject to inspection and testing at times and places Buyer determines, both before and after delivery. Vendor will permit access to its facilities to verify the quality of work, records and materials, and Buyer may inspect all licenses, permits and testing records. Any discount offered by Vendor shall begin from when Goods are received by Buyer. Inspections and payments by Buyer prior to delivery, including payments to obtain discounts, shall not constitute acceptance nor constitute a waiver or release of any Terms.

3. IF ANY GOODS ARE NON-CONFORMING, IF THERE ARE ANY RETURNS BY ANYONE (BUYER, CUSTOMERS OR END USERS) FOR ANY REASON (INCLUDING DEFECTS, END USER COMPLAINTS OR THE FAILURE TO RESELL SOME GOODS), IF VENDOR OFFERS ANY MARKDOWN OR PROMOTION, AND/OR IF VENDOR BREACHES ANY MATERIAL PROMISES, THEN: (A) BUYER MAY WITHHOLD ALL PAYMENTS UNTIL THERE IS A RESOLUTION OF THE COMPLETE EXTENT OF ALL DEFECTS, RETURNS AND VENDOR'S BREACHES AS WELL AS A RESOLUTION OF THE NET AMOUNT THAT WILL BE OWED FOLLOWING CREDITS FOR DEFECTS, RETURNS AND VENDOR'S BREACHES; AND (B) BUYER WILL RECEIVE FULL CREDIT FOR ALL RETURNS, DEDUCTIONS/DEBITS, MARKDOWNS BY CUSTOMERS, HANDLING AND FREIGHT CHARGES BY CUSTOMERS, AND BUYER'S 18% HANDLING CHARGE (WHICH IS CALCULATED ON THE TOTAL AMOUNT CHARGED BY CUSTOMERS FOR RETURNS, MARKDOWNS AND/OR OTHER DEDUCTIONS). BUYER'S 18% HANDLING CHARGE APPLIES REGARDLESS OF WHETHER RETURNS ARE PHYSICALLY HANDLED BY BUYER OR WHETHER CUSTOMERS SEND RETURNS BACK DIRECTLY TO VENDOR. UNLESS THE FRONT OF THIS ORDER EXPRESSLY STATES "NOT A PASS THROUGH": (A) ORDERS ARE PART OF A PASS THROUGH ARRANGEMENT (WHERE VENDOR ARRANGES FOR BUYER'S RESALES OF PRODUCT TO CUSTOMERS); AND (B) VENDOR SHALL BE FULLY RESPONSIBLE FOR ALL ISSUES WITH RESALES, INCLUDING PAYING BUYER'S STORAGE CHARGES ($30/PALLET/MONTH), PAYING BUYER'S HANDLING CHARGES FOR DELAYS BY CUSTOMERS IN ACCEPTING GOODS (18% OF THE AMOUNT OF THE GOODS), AND COMPENSATING BUYER FOR ALL UNUSED PACKAGING AND LOST PROFITS.

Exhibit 2
Page 12
Page 1

**US MERCHANTS FINANCIAL GROUP, INC.**
8737 Wilshire Blvd. • Beverly Hills, CA 90211
310-228-4000 • FX: 310-652-9905

**Purchase Order Terms and Conditions**

4. Prices of Goods are those stated on the front side of the Order. Vendor agrees that such prices will not be less favorable than those charged to other of Vendor's customers for similar Goods at any time within a two-year period from the date of sale to Buyer. Vendor agrees to credit Buyer for all costs associated with any overpayment/overcharge. Prices for Goods remain firm despite any delays in delivery or acceptance. All insurance, packaging, storage and transportation costs are borne by Vendor. Unless an Order otherwise states, no charge will be allowed for tooling, printing plates, packing or shipping. The price specified in an Order includes all taxes, fees and other charges, and Buyer is not obligated to pay any other charges/amounts in any form.

5. If any Goods do not meet Buyer's specifications or otherwise do not strictly conform to the Order, Buyer may reject all or any part of such Goods. Any Goods rejected after delivery may, at Buyer's option, (a) be returned to Vendor for reimbursement, credit, set-off, replacement or correction, at Vendor's sole expense, or (b) Buyer may correct or replace such Goods, at Vendor's sole expense, without obligation to return defective Goods. Acceptance of any portion of any delivery from Vendor shall not be deemed to constitute a waiver of Buyer's right to discover damaged Goods, and in no event will any acceptance of a portion of Goods be deemed an acceptance of any portion not specifically and expressly accepted. Vendor will credit Buyer for damaged, mishandled, or defective Goods.

6. IN ADDITION TO ANY OTHER WARRANTIES, VENDOR EXPRESSLY WARRANTS THAT ALL GOODS WILL (i) BE SALABLE TO ANYONE, EVEN THOSE OUTSIDE ANY EXPRESSLY DESIGNATED OR AUTHORIZED CHANNELS OF DISTRIBUTION, AND BE FREE FROM DEFECTS IN OR CLAIMS AGAINST GOOD TITLE, (ii) CONFORM TO BUYER'S SPECIFICATIONS AND ORDER, (iii) BE FREE FROM DEFECTS IN MATERIAL, DESIGN AND WORKMANSHIP, (iv) BE MERCHANTABLE IN ALL RESPECTS, (v) BE FIT FOR THE PARTICULAR PURPOSE FOR WHICH BUYER INTENDS TO USE THE GOODS, (vi) COMPLY WITH ALL COURT ORDERS, JUDGMENTS, AGREEMENTS, LAWS AND REGULATIONS OF ANY KIND, (vii) NOT INFRINGE ON ANY OTHER PARTY'S RIGHTS, INCLUDING RIGHTS UNDER ANY CONTRACTS, PATENTS, TRADEMARKS, TRADES DRESS, TRADE NAMES, COPYRIGHTS, RIGHTS OF PRIVACY, TRADE SECRETS AND OTHER INTELLECTUAL PROPERTY RIGHTS, (viii) BE PROVIDED IN COMPLIANCE WITH OSHA (29 U.S.C. 651), CPSA (5 U.S.C. 5314, 5315 AND 15 U.S.C. 2051-2081) AND ALL OTHER SAFETY AND LABOR RULES. ANY ATTEMPT BY VENDOR TO EXCLUDE, LIMIT OR DISCLAIM THE FOREGOING, WHETHER IN VENDOR'S ACKNOWLEDGMENT, INVOICE OR OTHERWISE, IS NULL AND VOID.

7. Unless otherwise stated in this Order, the applicable Order number shall appear on Vendor's tags, containers, bills of lading, packing lists and Invoices. All corrugated items must show Buyer's name. Shipments shall be accompanied by a packing slip describing the contents, weight and quantity of Goods in each package. If an Invoice does not reflect the correct Order number, then payment terms do not commence until receipt of a revised Invoice. Any Goods Buyer specifies as requiring a pallet must be shipped on 4-Way GMA # 1 hardwood pallet, and non-conformity in this respect is subject to a debit at the actual pallet rate plus a $10 handling fee per pallet.

8. VENDOR'S EXCLUSIVE REMEDY AND BUYER'S SOLE LIABILITY IN ANY LAWSUIT, CLAIM OR LOSS THAT RELATES TO OR ARISES OUT OF ANY TRANSACTION, WHETHER BASED ON CONTRACT, TORT OR OTHER THEORY, SHALL BE LIMITED TO BUYER'S SPECIFIED PRICE FOR THE GOODS. IN NO EVENT SHALL BUYER BE LIABLE FOR ANY PUNITIVE, CONSEQUENTIAL OR BUSINESS INTERRUPTION DAMAGES, REGARDLESS OF CAUSE OR FORM AND EVEN IF BUYER IS ON PRIOR NOTICE. ONLY IF ANY PRECEDING PART OF THIS SECTION IS UNENFORCEABLE, THEN THIS SECTION SHALL NOT RELIEVE BUYER FROM LIABILITY FOR GROSS NEGLIGENCE OR WILLFUL ACTS.

9. Until Buyer accepts delivery, Vendor assumes all risk of loss to the Goods, will secure the Goods and will obtain insurance over the Goods. Acts of God, war, riot, embargoes, fire, explosions, strikes and any causes beyond Buyer's complete control are grounds for Buyer to terminate or suspend delivery, without penalty.

10. Buyer may, at any time, notify Vendor in writing of changes in: (a) tooling, drawings, designs or specifications, where the Goods to be furnished are to be specially manufactured for Buyer; (b) method of shipment or packing; (c) place of delivery; and (d) delivery schedule. Vendor will promptly comply with such changes. If such changes increase or decrease the cost, or the time required, for Vendor's performance, an equitable adjustment will be made in the price or delivery schedule or both, but only if a written claim by Vendor for adjustment under this Section is asserted within five (5) days from Buyer's notice of the changes. Failure to agree on a claim for an equitable adjustment may be resolved by litigation, but Vendor must still promptly perform this Order as changed.

2

**Exhibit 2**
**Page 13**



**Purchase Order Terms and Conditions**

11.  Buyer has the exclusive right, title and interest in and to all artwork, inventions, processes, designs, molds, tooling, printing plates, dies, die lines and other properties, made or acquired by Vendor in fulfilling an Order (collectively "Designs and Tools") whether or not such Designs and Tools were charged to or paid for by Buyer.  Vendor shall transmit to Buyer all Designs and Tools within 48 hours after Buyer's request. If Vendor fails to transmit such Designs and Tools within 48 hours after Buyer's request, Vendor agrees to reimburse Buyer any expenses incurred by Buyer in making new Designs and Tools.

12.  Vendor shall not disclose any nonpublic, confidential or trade secret information obtained from Buyer.  If any Goods contain a trademark, patent, character, design, name, symbol and/or other proprietary material owned, copyrighted or licensed by Buyer ("Licensed Material"), Vendor agrees that Licensed Material is in no way Vendor's property.  Vendor shall not use in any way any of the Designs and Tools, or any trademarks, patents, trade names, copyrighted works or samples of Buyer for any purpose other than to perform this Order. Vendor and Buyer acknowledge that they are not agents of each other.

13.  Vendor shall defend (counsel selected by Buyer and paid by Vendor), indemnify and hold harmless Buyer and Buyer's officers, directors, employees and agents, from all claims, losses, demands, liabilities, actions, damages, settlements, and expenses in any way arising out of or related to any actual or alleged: (a) defect in design, material or workmanship of the Goods; (b) breach by Vendor of any of these Terms; (c) personal injury, death or property damage in connection with the Goods; (d) infringement or misappropriation of any patent, copyright, trade name, trade dress or trade secret regarding the Goods; (e) acts or omissions of Vendor; and (f) price discrimination or price fixing regarding the Goods.  Buyer may control any defense and is authorized to settle any claim/lawsuit.

14.  The agreement between Buyer and Vendor has been made in Los Angeles, California, requires performance in Los Angeles, California, and all rights and duties arising out of or relating in any way to any Order or transaction(s) between the parties, including any and all disputes as to the legality, interpretation, enforcement and performance of the Terms, shall be governed by, construed and enforced in accord with the laws of the State of California without regard to any conflict of laws rules.  VENDOR AGREES THAT SERVICE OF PROCESS ON VENDOR MAY BE EFFECTED ON VENDOR EITHER BY SERVICE ON THE SECRETARY OF STATE OF CALIFORNIA OR BY EMAIL TO ANY ACTIVE/VALID EMAIL ADDRESSES USED IN CORRESPONDENCE BETWEEN THE PARTIES DURING THE COURSE OF THEIR BUSINESS RELATIONSHIP, WITH SUCH EMAIL SERVICE CONSTITUTING PERSONAL, HAND SERVICE ON THE DATE OF TRANSMISSION.  VENDOR AGREES THAT VENUE AND JURISDICTION FOR ANY AND ALL DISPUTES WITH BUYER SHALL EXCLUSIVELY LIE WITH A COURT OF COMPETENT JURISDICTION LOCATED IN THE COUNTY OF LOS ANGELES, CALIFORNIA.

15.  Vendor's rights and duties may only be assigned upon Buyer's prior written consent.  The rights and duties hereunder are binding upon and inure to the benefit of the parties, their respective successors, Buyer's assigns and Vendor's permitted assigns.  The rights and duties hereunder shall survive the termination of the parties' agreement and shall not be deemed waived, terminated or merged by Buyer's acceptance of performance.  Buyer's failure to strictly enforce any Terms, or to exercise any rights, shall not constitute a waiver of Buyer's rights to strictly enforce such Terms or to exercise such rights thereafter.  The waiver by Buyer of any default or breach must be specifically and expressly agreed to in writing and signed by a corporate officer of Buyer, and any such waiver shall not operate as a waiver of any other default or breach, even of the same kind.  To the extent Buyer has waived any rights or Terms, such waiver shall not be deemed or construed as a further or continuing waiver.  Buyer's rights and remedies are cumulative and in addition to any rights and remedies at law or in equity.

16.  These Terms constitute the entire agreement between the parties. Vendor approves the Terms after review by its legal counsel or waives its right to such review.  There shall be no right to attorneys' fees on any claims related to a breach of these Terms, the parties' promises and/or the transactions between the parties.  If any term herein is to any extent illegal, otherwise invalid, or incapable of being enforced, then such term shall be excluded to the extent of such invalidity or unenforceability, all other terms hereof remain in full force and effect, and to the extent permitted and possible, the invalid or unenforceable term shall be deemed replaced by a term that is valid and enforceable that comes closest to expressing the intention of such invalid or unenforceable term.  If application of the preceding sentence materially and adversely affects the economic substance of the transaction, then the party adversely impacted is entitled to equitable compensation for such adverse impact, provided the reason for the invalidity or unenforceability of a term is not due to serious misconduct by the party seeking such compensation.

**Exhibit 2**
**Page 14**